UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------X
THEODORE HUTCHINS,

                                 Plaintiff,

              -against-

FORMER MONTICELLO POLICE CHIEF DOUGLAS SOLOMON,
FORMER MONTICELLO ACTING POLICE CHIEF MARK
JOHNSTONE,
FORMER MONTICELLO POLICE DETECTIVE LUIS FELICIANO,
AND SULLIVAN COUNTY DISTRICT ATTORNEY JAMES FARRELL,

                              Defendants.
-------------------------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**16 CV 10029 (KMK)**

**JURY TRIAL DEMANDED**

Plaintiff, THEODORE HUTCHINS, by and through his attorneys, **THE LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC,** as and for his Complaint, respectfully alleges, upon information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States of America.

2. Plaintiff, THEODORE C. HUTCHINS, the VILLAGE OF MONTICELLO ("MONTICELLO") Trustee and an African-American man, was falsely charged, in a sealed indictment, with acting in concert with JOHN LIGRECI ("LIGRECI"), the Village Manager for Monticello, to commit two (2) counts of Official Misconduct (PL § 195.00(1)) and two (2) counts of Coercion in the First Degree (PL § 135.65(2)). Official Misconduct is a misdemeanor, and Coercion in the First Degree is a felony. As a result, Plaintiff was convicted of all counts after two trials, served several days in jail and received a sentence of

1

probation before his conviction was reversed on appeal.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

5. Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claim occurred in Sullivan County, in the State of New York.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. Plaintiff, THEODORE HUTCHINS, is currently a resident of the Village of Monticello, Sullivan County, State of New York. At all relevant times, Plaintiff was on the Board of Trustees for the Village of Monticello.

8. Plaintiff is a 45 year-old, man who has been a life-long resident of Sullivan County, N.Y.

9. He has been employed full-time with the New York State Division For Youth since 1999 and is currently a Senior Youth Counselor at the Goshen Secure Facility in Goshen, N.Y.

10. Until this conviction, Mr. Hutchins was an elected Village Trustee for the Village of Monticello, N.Y. and had served as the Deputy Mayor.

11. As the Village of Monticello Trustee, Mr. Hutchins was one of five other Trustees who were elected to oversee the administration of the Village of Monticello. Individually, a Village

2

Trustee had no direct power or authority.

12. MONTICELLO is a municipality created and authorized under the laws of the State of New York, located in Sullivan County.  It is authorized by the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the Village of Monticello Police Department ("MPD"), and their employees.

13. Up until March 1, 2012, VILLAGE OF MONTICELLO MAYOR and FORMER MONTICELLO POLICE CHIEF DOUG SOLOMON ("Mayor Solomon" or "Defendant Solomon") was an individual employed by the Village of Monticello as a member of the MPD. MAYOR SOLOMON is the FORMER MONTICELLO POLICE CHIEF. Defendant Solomon is sued herein in his official and individual capacities.  Defendant Solomon began working for the City of Beacon Police Department on March 5, 2012, and he is still employed there. He was elected as the Trustee of the Village of Monticello in March 2014 and was appointed as Mayor of the Village of Monticello in March 2016, position which he still holds.

14. At all times hereinafter mentioned, FORMER MONTICELLO ACTING POLICE CHIEF MARK JOHNSTONE ("DEFENDANT JOHNSTONE"), was an individual employed by the Village of Monticello as a member of the MPD. Defendant Johnstone was acting Police Chief of the Village of Monticello from March 1, 2012 to August 19, 2012.  Defendant Johnstone became a lieutenant of the MPD in August 2012. At the time of Plaintiff's indictment and trial, Defendant Johnstone was a lieutenant with the MPD. Defendant Johnstone is sued herein in his official and individual capacities.

15. Up until August 2012, MONTICELLO POLICE DETECTIVE LUIS FELICIANO ("DEFENDANT FELICIANO") was an individual employed by the Village of Monticello as

3

a member of the MPD. Upon information and belief, Defendant Feliciano currently works as an investigator for the Sullivan County District Attorney's Office, and did so at the time of the prosecution of Plaintiff. Defendant Feliciano is sued herein in his official and individual capacities.

16. Defendants Solomon, Johnstone, and Feliciano are referred to collectively herein as the "Monticello Defendants".

17. At all times hereinafter mentioned, SULLIVAN COUNTY DISTRICT ATTORNEY JAMES FARRELL was an individual employed by THE COUNTY OF SULLIVAN (or "SULLIVAN COUNTY"). Defendant Farrell is sued herein in his official and individual capacities.

18. At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the VILLAGE OF MONTICELLO and COUNTY OF SULLIVAN.

19. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant, VILLAGE OF MONTICELLO and/or COUNTY OF SULLIVAN.

20. Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant, VILLAGE OF MONTICELLO and/or COUNTY OF SULLIVAN.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. PLAINTIFF'S CONVICTION, SENTENCING, AND SUCCESSFUL APPEAL

21. Plaintiff incorporates herein each of the foregoing allegations.

22. Plaintiff, THEODORE C. HUTCHINS, Village of Monticello Trustee and an African-American man, was falsely charged, in a sealed indictment, with acting in concert with JOHN LIGRECI ("LiGreci"), the Village Manager for the Village of Monticello, to commit two (2) counts of Official Misconduct (PL § 195.00(1)) and two (2) counts of Coercion in the First Degree (PL § 135.65(2)). Official Misconduct is a misdemeanor, and Coercion in the First Degree is a felony.

23. The indictment alleged that Plaintiff acted as an accessory to LiGreci, who allegedly (1) used his executive authority to stop FORMER MONTICELLO POLICE CHIEF DOUGLAS SOLOMON ("Solomon") from conducting a background investigation (the "Background Investigation") into an African-American police officer applicant named KARIEM MCCLINE ("McCline"), and (2) ordered the FORMER MONTICELLO ACTING POLICE CHIEF MARK JOHNSTONE ("Johnstone") to answer certain questions regarding that same background investigation into McCline.

24. Both orders pertained to the employment application of Kariem McCline, an African-American man, who was seeking to become a police officer for the Village of Monticello.

25. Each of the Defendants premised the charges against the Plaintiff on the allegation that LiGreci lacked the authority to give the two orders noted above, and that Plaintiff was aware that LiGreci lacked such authority.

26. The Monticello Defendants knew that such allegations were false, yet they falsely informed Defendant Farrell that Plaintiff had coerced them to stop the Background Investigation and

5

then to answer questions about the Background Investigation.

27. Despite the fact that there was no probable cause to prosecute Plaintiff, Defendant Farrell manufactured several conditions – including a criminal investigation regarding Kariem McCline, and an investigatory file regarding Kariem McCline – which were necessary to further charge Plaintiff with the crimes brought against him.

28. As a result, on November 8, 2012, Mr. Hutchins was indicted by a Sullivan County Supreme Court Grand Jury and charged with the above-mentioned crimes.

29. Mr. Hutchins was arraigned in connection with the aforementioned Indictment and was released on bail.

30. In the criminal matter, LiGreci and McCline were Plaintiff's co-Defendants.

31. On May 6, 2013, the first trial of the Indictment commenced and continued until a mistrial was declared on May 9, 2013.

32. Subsequently, Plaintiff's co-Defendant LiGreci entered into a plea arrangement with the prosecutor and co-Defendant McCline's case was severed.

33. On June 10, 2013, a retrial against Mr. Hutchins alone commenced and continued until the jury rendered a verdict of guilty on all four counts of the Indictment (two felonies and two misdemeanors) applicable to Mr. Hutchins on July 8, 2013.

34. On January 30, 2014, Mr. Hutchins was sentenced to a period of Five (5) years probation (with the first six (6) months being a sentence of incarceration), along with 500 hours of community service on the felony counts of the Indictment and Conditional Discharges on the two (2) misdemeanor counts.

35. In total, Mr. Hutchins served five days in jail for these false charges and false allegations made by the Defendants.

36. On January 30, 2014, a Notice of Appeal was filed, in the Sullivan County Clerk's Office.

37. Thereafter, Mr. Hutchins applied for and was granted bail pending appeal.

38. On January 12, 2016, the Third Department of the New York State Supreme Court Appellate Division reversed Plaintiff's conviction.

## B. KARIEM MCCLINE'S APPLICATION TO THE MONTICELLO POLICE DEPARTMENT

39. Plaintiff incorporates herein each of the foregoing allegations.

40. During 2010-2011, the MPD sought to hire a new officer and sought the cooperation of Mr. LiGreci and the Personnel Director for Sullivan County, Carolyn Hill, to begin the hiring process.

41. Pursuant to the Civil Service hiring guidelines for competitive class jobs such as police officer, applicants must take and pass the New York State Civil Service test.  If the applicant passes the test, then they are put on Civil Service List for consideration when openings arise.

42. Kariem McCline applied, qualified for, and was placed on the Civil Service List for consideration for future openings at the MPD and was included on the Civil Service List of qualified applicants generated by Ms. Hill to fill the request for a new police officer.

43. Defendant Solomon created a Background Investigation procedure to use in a Background Investigation into Kariem McCline.

44. The Monticello Defendants knew that no law tasked Solomon with the responsibility to conduct any Background Investigation.

45. Further, the Monticello Defendants knew that Solomon had created the procedure he was using to investigate Kariem McCline.

46. Defendant Solomon has testified that he had already made up his mind about the candidate's

7

qualifications before beginning the Background Investigation, and agreed that "no matter how long any investigation lasted, no matter how many people were interviewed, no matter how many documents were retrieved [and] no matter how many psychological examinations were performed, nothing was going to change [his] opinion" about Kariem McCline being unsuitable as a police officer.

47. Defendant Feliciano participated in the Background Investigation into Kariem McCline by asking various community members whether they knew if Mr. McCline associated with "undesirable people" and whether Mr. McCline lived with a paramour "out of wedlock," to list only a few examples.

48. LiGreci received a complaint from at least one respected member of the community that offensive questions were being asked as part of the Background Investigation into Kariem McCline.

49. As discussed in more detail below, LiGreci decided to halt the Background Investigation into Kariem McCline, in part, because it had proceeded in an in appropriate manner and because it was taking an inordinate amount of time.

50. LiGreci, having ordered the investigation to begin and not liking how it was being conducted, ordered it to stop and was rightfully within his authority as the Village Manager when he did so.

## C.   FIRST COUNT OF COERCION IN THE FIRST DEGREE AND OFFICIAL MISCONDUCT: LIGRECI'S DIRECTIVE TO DEFENDANT SOLOMON TO STOP THE BACKGROUND INVESTIGATION WAS AUTHORIZED

51. Plaintiff incorporates herein each of the foregoing allegations.

52. One of Plaintiff's convictions for Coercion in the First Degree (a felony) and one of his

convictions for Official Misconduct (a misdemeanor), were premised on his alleged accessory liability to LiGreci's directive to the police Chief Douglas Solomon to stop the Background Investigation into Karim McCline.

53. Proof of Plaintiff's guilt for both coercion in the first degree and for official misconduct based on a theory of accessory liability for an executive's (in this case, LiGreci's) order to a subordinate employee (in this case, Solomon) requires proof beyond a reasonable doubt that, objectively, the executive did not have authority to give such a directive and further that, subjectively, Plaintiff knew that the executive lacked such authority.

54. At all times relevant herein, it was within LiGreci's authority as the Village Manager to commence and to halt the Background Investigation into McCline.

55. The Monticello Defendants are and were well aware that the Village Manager – LiGreci – had the sole authority to make hiring decisions for the municipal departments, including the police department.

56. The Village Manager, LiGreci served as a supervisor to the Police Chief.

57. Mr. LiGreci ordered police Chief Solomon to conduct a Background Investigation into Kariem McCline, as part of the hiring process.

58. Plaintiff was not aware of any independent authority possessed by Solomon to conduct this Background Investigation, nor could he have been since no authority existed.

59. No law tasked any Defendant with the authority to conduct the Background Investigation.

60. The Village of Monticello never vested Defendants Solomon, Johnstone, Feliciano or Farrell with the authority to conduct Background Investigations.

61. The MPD had no independent duty or authority to conduct background investigations into MPD candidates.

62. Prior to commencing criminal process and making criminal allegations against the Plaintiff, each of the Monticello Defendants were well aware that Defendant Solomon had created the Background Investigation procedure used to investigate Kariem McCline.

63. At the same time, each of the Defendants were also aware that the procedures were developed by Solomon on his own initiative after receiving the directive from LiGreci to begin the Background Investigation, and there was no publication, regulation, protocol, or law directing Solomon to conduct background investigations or instructing how to conduct such background investigations.

64. During the background investigation, led by Detective Feliciano, Mr. LiGreci received a complaint from the Mack family regarding inappropriate questions they had been asked during the Background Investigation into Mr. McCline.

65. Thereafter, Mr. LiGreci confronted Chief Solomon about the inappropriate questions and the length of time the Background Investigation was taking and ordered him to stop the Background Investigation.

66. LiGreci, as the Village Manager, was not required to even consider the results of any such investigation.

67. Moreover, each Defendant was aware that LiGreci's directive to halt the Background Investigation into Kariem McCline was authorized.

68. For this order, both Mr. LiGreci and Mr. Hutchins were indicted for Official Misconduct and Coercion in the First Degree.

69. However, as the Monticello Defendants were well aware, LiGreci's order to stop the investigation in Kariem McCline could not legally be "unauthorized" or even stretched into being criminal, when he was rightfully within his power and justified in the exercise of that

power.

70. As a consequence, since LiGreci acted appropriately and committed no crime, the Monticello Defendants should not have caused Mr. Hutchins' arrest and prosecution for criminal activity related to that same conduct by LiGreci.

71. Additionally, Plaintiff did not individually compel or induce Defendant Solomon in any way to stop the Background Investigation into Kariem McCline.

72. Despite these facts, the Monticello Defendants falsely informed Defendant Farrell – and misled him into believing – that they had the authority to conduct the Background Investigation, that LiGreci had improperly ordered them to stop the Background Investigation and coerced them, and that Plaintiff was an accessory to this crime.

73. The manner in which Defendants Feliciano, Solomon, Johnstone provided this false information to Defendant Farrell is as follows:

    a.    Defendant Johnstone became acting police chief of the MPD on March 1, 2012, when Defendant Solomon retired.

    b.    Up until his retirement, Defendant Solomon had compiled the investigative file regarding Kariem McCline which is referred to herein.

    c.    Prior to his retirement, Defendant Solomon was in regular communication with Defendant District Attorney Farrell regarding things that were going on in the Village of Monticello.

    d.    Upon information and belief, Defendant Solomon informed Defendant Farrell that he frequently felt threatened by Plaintiff Hutchins related to the application of Kariem McCline.

    e.    It was not until after Defendant Solomon began falsely informing Defendant

11

Farrell that he was threatened by Plaintiff Hutchins, that Defendant Solomon chose to accuse Hutchins of a felony.

f.       Prior to Defendant Johnstone taking over as police chief of the MPD, Defendant Feliciano was responsible for the background investigation which is detailed herein.

g.       Upon his retirement, Defendant Solomon turned this file and its contents over to Defendant Johnstone.

h.       Upon Johnstone taking over as police chief, Defendant Feliciano prepared a final memorandum and completed the background investigation.

i.       Defendant Johnstone also spoke with Defendant Solomon about the background investigation.

j.       On July 25, 2012, a criminal investigation began into the application process of Kariem McCline.

k.       As part of this investigation, Defendant Johnstone provided to Defendant Farrell information about the hiring process and application of Kariem McCline.

l.       Prior to the criminal investigation, Defendant Johnstone falsely informed Defendant Farrell that Plaintiff was engaged in the criminal activity which led to his indictment and conviction.

m.      In so doing, Defendant Johnstone spoke to Defendant Farrell on a daily basis between the time he became acting police chief in March of 2012, and the time the criminal investigation began in July 2012.  Defendant Johnstone also met with Defendant Farrell in person to relay these false allegations.

n.       On September 19, 2012, Defendant Johnstone also testified at the grand jury

against Plaintiff.

74. Each of the Defendants falsely alleged that LiGreci and Plaintiff interfered with the MPD's independent duty and obligation to conduct background investigations into police officer candidates.

75. In sum, each of the Monticello Defendants caused Plaintiff's arrest and prosecution for acting as a criminal accessory to conduct which was not criminal

76. Upon information and belief, Defendants Solomon, Johnstone, and Feliciano fabricated the allegations against Plaintiff in order to advance their own political and professional careers, or did so for personal revenge, as in the case of Defendant Solomon.

77. Indeed, in 2014, Defendant Solomon ran for Plaintiff's trustee seat, and in 2016 ran for Mayor of the Village of Monticello.

78. Defendant Johnstone has since been promoted to the position of Lieutenant with the MPD.

79. Defendant Feliciano is now working for the Sullivan County District Attorney's Office.

80. The Defendants commenced and pursued these false and impossible allegations against Plaintiff despite their awareness of the facts alleged herein.

**D. SECOND COUNT OF COERCION IN THE FIRST DEGREE AND OFFICIAL MISCONDUCT: LIGRECI'S DIRECTIVE TO DEFENDANT JOHNSTONE TO ANSWER QUESTIONS ABOUT THE MCCLINE BACKGROUND INVESTIGATION WAS AUTHORIZED**

81. Plaintiff incorporates herein each of the foregoing allegations.

82. One of Plaintiff's convictions for Coercion in the First Degree (a felony) and one of his convictions for Official Misconduct (a misdemeanor), were premised on LiGreci's alleged directive to Defendant Johnstone to answer questions about the McCline Background Investigation, which was the subject of potential civil litigation.

83. Mr. LiGreci had learned that the Village of Monticello faced potential civil litigation from Mr. McCline for the discriminatory fashion in which his application was processed and his background investigation was conducted.

84. LiGreci presented Defendant Solomon and, subsequently Defendant Johnstone, with a list of questions to answer regarding the background investigation into Mr. McCline in preparation for the possible civil litigation.

85. LiGreci gave Acting Chief Johnstone a deadline in which to answer the questions.

86. After Johnstone received the directive from LiGreci to answer the six questions, Defendant Johnstone consulted with Defendant Farrell who informed him that there was an ongoing criminal investigation into Kariem McCline and LiGreci.

87. This criminal investigation was initiated and manufactured by Defendant Farrell for the purpose of bringing about the subsequent criminal charges against the Plaintiff and LiGreci which underlay this lawsuit.

88. Defendant Johnstone refused to provide LiGreci with answers to the questions under the guise of avoiding interference with the allegedly ongoing criminal investigation.

89. Defendant Johnstone testified at trial that he never informed LiGreci of the ongoing criminal investigation, and he explained that he did not want certain people to learn about the criminal investigation, including Plainitff.

90. However, there was no criminal investigation into the MPD's prior human resources work, and there was no legitimate basis for Defendants Johnston and Farrell to keep information related to their human resources activities confidential from the Village of Monticello.

91. Accordingly, it was patently unreasonable for any of the Defendants, including Defendant Johnstone, to conclude that he believed that he had a legal right or obligation to refuse to answer the questions.

92. After Defendant Johnstone consulted with Defendant James Farrell at the District Attorney's office, Johnstone wrote answers to LiGreci's questions, but submitted them to MPD Chief Mir on the day they were due to LiGreci.

93. Johnstone's answers to the questions were immediately seized by investigators for the Sullivan County District Attorney's office at the directive of Defendant Farrell. Johnstone's answers were never delivered to LiGreci.

94. Each of the Defendants, including Defendant Farrell, the Sullivan County District Attorney's Office, Sullivan County, and the Village of Monticello, manufactured the conditions needed to charge Mr. LiGreci and Plaintiff with official misconduct.

95. Each of the Defendants knew that any such order made by LiGreci to Johnstone could not be illegal or unauthorized under these circumstances because the Defendants specifically acted to keep the fact of any such criminal investigation from LiGreci, and also from the Plaintiff.

96. Nonetheless, each of the Monticello Defendants falsely alleged and informed Defendant Farrell that the Plaintiff had acted as an accessory to LiGreci's order to Defendant Johnstone to answer six questions relating to the official police background investigation into MPD applicant McCline.

97. The Defendants falsely alleged that LiGreci knew that the order was unauthorized when he made it because there was an ongoing criminal investigation.

98. In fact, all of the information available to each of the Defendants made clear that Plaintiff Hutchins remained ignorant of the apparently confidential criminal investigation.

15

99. In sum, each of the Defendants actively attempted to keep Plaintiff and LiGreci ignorant of the ongoing investigation, a fact which rendered the charges against them factually impossible.

100.     Each of the Defendants were aware of this factual impossibility (which they had created) and yet each of them actively and maliciously pursued criminal charges against the Plaintiff Mr. Hutchins.

101.     It was unreasonable and impossible for any of the Defendants to conclude that Plaintiff Hutchins knew, prior to LiGreci's directive, that a criminal investigation had been commenced that deprived LiGreci of the authority to have Johnstone answer the questions.

102.     Accordingly, Mr. Hutchins could not have been lawfully charged with acting as an accessory to these charges.

103.     LiGreci was authorized to direct Defendant Johnstone – Solomon's successor as Police Chief – to provide answers to questions related to Kariem McCline's Background Investigation, which was the subject of potential civil litigation.

104.     The Monticello Defendants were each well-aware Mr. LiGreci had the authority to order Defendant Johnstone to answer the subject questions, and the Monticello Defendants, the District Attorney's Office, and the MPD, created a criminal investigation into Kariem McCline that would purportedly shield the Defendants from Mr. LiGreci's lawful inquiries with the veil of an "ongoing criminal investigation."

105.     Defendant Johnstone and Defendant Farrell were aware that Johnstone had a legal obligation to answer the six questions posed to him by LiGreci, and that by demanding responses, LiGreci was not committing a criminal act (and by extension, Plaintiff could not be an accessory to that which was not criminal)

16

106.    Moreover, as each of the Defendants were well aware, when Defendant Johnstone received a directive from a different supervisor to answer the same questions for LiGreci, Johnstone complied.

107.    Plaintiff never issued an order of any kind to Defendant Johnstone.

**E.    THE MONTICELLO DEFENDANTS CAUSED PLAINTIFF'S ARREST, PROSECUTION, AND DUE PROCESS VIOLATIONS**

108.    Plaintiff incorporates herein each of the foregoing allegations.

109.    Plaintiff was charged and prosecuted on the basis of false allegations supplied by the Monticello Defendants.

110.    Pursuant to these false statements, false information, and fabricated evidence, Plaintiff was falsely charged with acting in concert to commit two counts of official misconduct and two counts of coercion in the first degree.

111.    These charges were made on the basis of false allegations sworn to by the Monticello Defendants.

112.    Defendants provided these false statements to the Sullivan County District Attorney's Office knowing that there was no basis to support these allegations.

113.    These and other allegations, information, and evidence, were false and the Defendants knew them to be false when he made them.

114.    The decision to arrest, charge, and prosecute Plaintiff was objectively unreasonable under the circumstances.

115.    At no time did there exist sufficient cause to seize or arrest Plaintiff, nor could the Monticello Defendants have reasonably believed that such cause existed.

116.    The factual allegations and testimony sworn to by each Monticello Defendant were

17

materially false and deliberately made to justify the illegal arrest and prosecution of Plaintiff.

117.    At no time did the Monticello Defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against Plaintiff.

118.    The individual Monticello Defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the Defendants who engaged in the misconduct described herein as required.

119.    The Monticello Defendants also violated Plaintiff's due process rights pursuant to Brady by misleading Defendant Farrell as to the coercion and interference they claim to have experienced at the hands of the Plaintiff.

120.    The Monticello Defendants also violated Plaintiff's due process rights pursuant to Brady by failing to disclose the recorded conversations between Defendant Feliciano and other members of the community which were taken during the Background Investigation into Kariem McCline.

121.    The Monticello Defendants committed egregious Brady and Rosario violations in this case by failing to provide Defendant Farrell, at any time prior to the trial testimony of Detective Feliciano, a secretly recorded conversation between Detective Feliciano and Mrs. Mack, a witness for the defense in Plaintiff's criminal trial.

122.    The Monticello Defendants were required to disclose this exculpatory information to Defendant Farrell.

123.    The Monticello Defendants purposely failed to disclose this recording to Defendant Farrell during Plaintiff's criminal prosecution and trials, thereby continuing to violate Plaintiff's constitutional rights and in an attempt to hasten the fraudulent criminal prosecution which they had set in motion along with the other Defendants in this case.

124.    As a result, Mr. Hutchins was denied the opportunity to cross-examine Defendant Detective Feliciano on any number of questions regarding his bias, the purpose of the clandestine recording and possible contradictions between the recording and Detective Feliciano's testimony at both trials.

125.    Detective Feliciano was a key witness for the prosecution at Plaintiff's criminal trial.

126.    He falsely testified at length at trial about how he believed his Background Investigation of Kariem McCline was obstructed by Plaintiff.

127.    As a result, deprivation of the recorded statement and the knowledge that the recorded statement existed prejudiced Plaintiff in his ability to impeach Defendant Detective Feliciano.

128.    The opportunity to impeach and cross examine a key State witness was lost on a critical area of testimony.

129.    As such the non-disclosure contributed to the result of the trial and the improper conviction of the Plaintiff.

130.    Further, the Monticello Defendants' voluntary and willful suppression of the recorded statement was a clear Brady and/or due process violation.

131.    Detective Feliciano made the recording and the Monticello Defendants had possession of this recording since his investigation began.

132.    The mere knowledge that the Monticello Defendants secretly recorded a conversation, let alone the actual content of that conversation, should have been disclosed.

133.    That at all times relevant herein, the Monticello Defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the VILLAGE OF MONTICELLO's interests and without legal justification or excuse.

19

## F. DEFENDANT FARRELL'S INVOLVEMENT IN THE BACKGROUND INVESTIGATION AND APPLICATION OF KARIEM MCCLINE (PRE-TRIAL AND EXTRA-JUDICIAL MISCONDUCT BY FARRELL)

134.    Plaintiff incorporates herein each of the foregoing allegations.

135.    DEFENDANT SULLIVAN COUNTY DISTRICT ATTORNEY JAMES FARRELL was the lead prosecutor assigned to Plaintiff's prosecution.

136.    At all times relevant to the pre-trial and pre-prosecution investigation into Karim McCline and Plaintiff, Defendant Farrell was the chief law enforcement official in Sullivan County.

137.    At all times relevant to the prosecution and trial of Plaintiff, Defendant Farrell was the chief law enforcement official in Sullivan County.

138.    District Attorney James Farrell acted in an investigatory capacity to bring about the false and baseless charges against the Plaintiff without any probable cause, and before it could even reasonably be said that arguable probable cause existed to arrest, charge, or prosecute the Plaintiff.

139.    Defendant Farrell was actively involved in the pre-arrest investigation related to the fabricated allegations against the Plaintiff, and in fact participated in the fabrication of the allegations against the Plaintiff.

140.    With respect to the pre-arrest investigation of Plaintiff, Defendant Farrell was acting as an investigator, and not as an advocate of the Court.

141.    As early as July 30, 2012 (and likely earlier than this) Defendant Farrell – an employee of Sullivan County – actively interfered in the MPD application process of Kariem McCline in an attempt to bolster the anticipated allegations against Plaintiff.

20

142.     For example, by way of a letter dated July 30, 2012, Defendant Farrell wrote to Carolyn Hill, the Commissioner of the Sullivan County Personnel Department.

143.     In this letter, Defendant Farrell stated that he had been speaking with Defendants Johnstone and Solomon about the application process of Kariem McCline, and that each of them wanted Mr. McCline to be disqualified from the MPD job he had applied for.

144.     In so doing, Defendant Farrell attempted to interfere into the hiring process in which he had no authority.

145.     Before Plaintiff was even criminally charged, Defendants Farrell, Solomon, Johnstone, and Feliciano manufactured a damaging and incendiary investigative file regarding the Background Investigation into Kariem McCline so that they could use it to allege in Court and in the media that Plaintiff was guilty by association.

146.     Defendant Farrell's actions in this regard were not made for the purpose of carrying out his official duties, responsibilities, or functions as Sullivan County District Attorney.

147.     Rather, Defendant Farrell engaged in these actions in order to create and manufacture a high profile case to gain media attention, and to advance his own career and profile.

148.     One of the main purposes of this file was to prejudice Mr. Hutchins in Court, in the media, and in his community, though he had done nothing wrong.

149.     As noted above, Defendant Farrell worked with the MPD and the Defendants named herein to manufacture the conditions needed (Johnstone's need to say "no" to LiGreci's order to answer the six questions) by creating the criminal investigation into Kariem McCline in the first place.

150.     Defendant Farrell engaged in these and other violations in his investigatory capacity and his not entitled to prosecutorial immunity.

## G.     THE IRREPARABLE HARM TO PLAINTIFF'S REPUTATION

151.     Plaintiff incorporates herein each of the foregoing allegations.

152.     Notwithstanding Mr. Hutchins' exoneration, his reputation has been permanently and irreparably harmed by the Defendants' false accusations, malicious prosecution, and fabrication of evidence.

153.     There are literally hundreds of postings on the Internet which still mention Mr. Hutchins' name in connection with the criminal charges brought against him.

154.     Upon information and belief, there are no Internet postings which mention Mr. Hutchins' exoneration and reversal of his conviction.

155.     Mr. Hutchins has been shunned by friends, neighbors and relatives in his own community where he has lived for his entire life, as a result of the false accusation and charges made by each of the Defendants.

156.     Mr. Hutchins was terminated from his position as a Village of Monticello Trustee as a result of the false charges brought against him.

157.     Most importantly, Mr. Hutchins' career has been permanently and irreparably destroyed as a result of the false charges brought against him.

158.     Though his conviction was reversed, Mr. Hutchins has tried to regain his previous community and employment positions, but the notoriety of this case – and in particular, of being known by the negative media attention generated by the Defendants in this case – has made it impossible for him to return to his previous employment and community status.

**H.**   **NATURE OF THIS ACTION**

159.   **Plaintiff incorporates herein each of the foregoing allegations.**

160.   This action seeks redress for the violation of Mr. Hutchins' constitutional rights as follows: (1) against the Monticello Defendants for falsely accusing Mr. Hutchins of official misconduct and coercion, maliciously prosecuting him, denying him the right to a fair trial, violating his due process rights, and giving false and misleading information to the Sullivan County District Attorney's office in order to secure an indictment and conviction; (2) against each of the Defendants for interfering into the Background Investigation of Kariem McCline in order to manufacture a file and criminal charges against McCline to bolster the criminal charges against Mr. Hutchins and thereby mislead and deceive the grand jury, members of the District Attorney's Office, the Court, and the public; (3) against the Defendants for conspiracy to violate Plaintiff's civil rights; (4) against each of the Defendants for publicizing Mr. Hutchins' indictment and prosecution solely for the purpose of advancing the personal and political ambitions of the Defendants; (5) against each of the Defendants for causing severe and irreparable harm to Mr. Hutchins' reputation, and permanently destroying his ability to earn a living in his community; (6) and against the Village of Monticello and Sullivan County for civil rights liability pursuant to Monell.

**FIRST CAUSE OF ACTION**
**MALICIOUS PROSECUTION,**
**DENIAL OF THE RIGHT TO FAIR TRIAL,**
**AND VIOLATION OF DUE PROCESS**
**PURSUANT TO 42 U.S.C. § 1983**
(Against the Individual Monticello Defendants)

161.     Plaintiff THEODORE HUTCHINS repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

162.     At no time did the Individual Monticello Defendants have any legal basis for arresting or imprisoning Plaintiff, or commencing criminal process, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

163.     The Individual Monticello Defendants willfully and intentionally seized, searched, detained, arrested and prosecuted Plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

164.     The Individual Monticello Defendants misrepresented and falsified evidence before the Sullivan County District Attorney and Grand Jury.

165.     The Individual Monticello Defendants did not make a complete and full statement of facts to the District Attorney.

166.     The Individual Monticello Defendants withheld exculpatory and impeachment evidence from the District Attorney.

167.     The Individual Monticello Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

24

168.     The Individual Monticello Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

169.     The Individual Monticello Defendants acted with malice in initiating criminal proceedings against Plaintiff.

170.     The Individual Monticello Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

171.     The Individual Monticello Defendants lacked probable cause to continue criminal proceedings against Plaintiff.

172.     The Individual Monticello Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

173.     Notwithstanding the perjurious and fraudulent conduct of the Individual Monticello Defendants, the criminal proceedings were terminated in Plaintiff's favor when his conviction was reversed on appeal.

174.     By so doing, the Individual Monticello Defendants, individually and collectively, subjected Plaintiff to malicious prosecution, malicious use and abuse of process, unlawful searches of person and property, fabrication of evidence, denial of fair trial, and denial of due process, and thereby violated, conspired to violate, and aided and abetted in the violation of Plaintiff's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

175.     By reason thereof, the Individual Monticello Defendants have violated 42 U.S.C. §1983 and caused Plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION
## MALICIOUS PROSECUTION,
## DENIAL OF THE RIGHT TO FAIR TRIAL,
## AND VIOLATION OF DUE PROCESS
## PURSUANT TO 42 U.S.C. § 1983
(Against Defendant District Attorney Farrell)

176.    Plaintiff THEODORE HUTCHINS repeats, reiterates, and realleges each and every

allegation set forth above with the same force and effect as if fully set forth herein and at

length.

177.    Defendant Farrell improperly intervened into the Background Investigation into

Kariem McCline in order to bolster the anticipated criminal charges against Plaintiff.

178.    At no time did Defendant Farrell have any legal basis for doing so, nor was there any

reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise

appropriate.

179.    By reason thereof, Defendant Farrell has violated 42 U.S.C. §1983 and caused

Plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the

deprivation of liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION
## CONPSIRACY AGAINST THE DEFENDANTS
## PURSUANT TO 42 U.S.C. § 1983
(Against the Individual Monticello Defendants and Defendant Farrell)

180.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above

with the same force and effect as if fully set forth herein and at length.

181.    The Monticello Defendants conspired with each other and with District Attorney

Farrell, and others, to reach a mutual understanding, and acted to undertake a course of

conduct to deny, injure, oppress, threaten, trick, and deceive Mr. Hutchins in the free exercise

of the right to be free from malicious prosecution and wrongful conviction and incarceration,

26

and other rights secured to him by the United States Constitution.

182.    In furtherance of the conspiracy, the Defendants, as already set forth herein:

a.  Falsely accused Plaintiff of coercion, intimidation, misconduct, and illegal activities;

b.  Created evidence and documents falsely accusing Plaintiff of criminal activity;

c.  Suppressed facts concerning impeachment and exculpatory evidence, including the Monticello Defendants failure to disclose to Defendant Farrell that they were lying about Plaintiff's conduct;

d.  Submitted false reports, false statements and evidence to further the conspiracy;

e.  Withheld relevant evidence and various <u>Brady</u> and <u>Rosario</u> material which exonerated Mr. Hutchins of wrongdoing; and

f.  Deliberately provided perjured testimony to the grand jury and at trial.

**WHEREFORE**, the Plaintiff respectfully requests judgment against Defendants as follows:

i.    an order awarding compensatory damages in an amount to be determined at trial;

ii.   an order awarding punitive damages in an amount to be determined at trial;

iii.  reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

iv.   directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: New York, New York
April 17, 2017

Respectfully submitted,
**LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**
*Counsel for the Plaintiff*
/S/

By:   JESSICA MASSIMI (JM-2920)
32 Old Slip, 8th Floor
New York, New York 10005
(212) 962-1020

28