UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEODORE HUTCHINS,

                                    Plaintiff,

            -v-

FORMER MONTICELLO POLICE CHIEF
DOUGLAS SOLOMON; FORMER MONTICELLO
ACTING POLICE CHIEF MARK JOHNSTONE;
FORMER MONTICELLO POLICE DETECTIVE
LUIS FELICIANO; and SULLIVAN COUNTY
DISTRICT ATTORNEY JAMES FARRELL,

                                    Defendants.

No. 16-CV-10029 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Jonathan S. Wachlarz, Esq.
Robert E. Borrero, Esq.
Law Offices of Michael S. Lamonsoff, PLLC
New York, NY
*Counsel for Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants Douglas Solomon, Mark Johnstone, and Luis Feliciano*

Steven C. Stern, Esq.
Alexander J. Eleftherakis, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendant James Farrell*

KENNETH M. KARAS, District Judge:

        Plaintiff Theodore Hutchins ("Plaintiff") brings this Action against former Monticello

Police Chief Douglas Solomon ("Solomon"), former Monticello Acting Police Chief Mark

Johnstone ("Johnstone"), Monticello Police Detective Luis Feliciano ("Feliciano") (collectively "Monticello Defendants"), all of whom were employed by the Village of Monticello as members of the Village of Monticello Police Department ("MPD"), and Sullivan County District Attorney James Farrell ("Farrell"), pursuant to 42 U.S.C. § 1983, alleging malicious prosecution, denial of the right to a fair trial, due process violations, and conspiracy to commit each of the foregoing. (*See* Am. Compl. (Dkt. No. 41).) Before the Court are Monticello Defendants' and Farrell's Motions To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Monticello Defs.' Not. Of Mot. (Dkt. No. 50); Farrell Not. Of Mot. (Dkt. No. 53).) For the reasons to follow, the Motions are granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's First Amended Complaint and are assumed to be true for purposes of resolving the Motions.

#### 1. Hiring of New Officer and Background Investigation

At all times relevant to the allegations in this case, Plaintiff served as a Trustee on the Board of Trustees for the Village of Monticello. (Am. Compl. ¶ 7.) Solomon was employed as Monticello Police Chief until March 1, 2012. (*Id.* ¶ 13.) He began working for the City of Beacon Police Department on March 5, 2012, and is still employed there. (*Id.*) He was elected as a Trustee of the Village of Monticello in March 2014 and was appointed as Mayor of the Village of Monticello in March 2016. (*Id.*) Johnstone was acting Police Chief of the Village of Monticello from March 1, 2012 to August 19, 2012. (*Id.* ¶ 14.) Johnstone became a lieutenant of the MPD in August 2012. (*Id.*) Feliciano was employed by the MPD as a detective and currently works as an investigator for the Sullivan County District Attorney's Office. (*Id.* ¶ 15.)

Farrell was the lead prosecutor assigned to Plaintiff's prosecution, (*id.* ¶ 135), as well as the chief law enforcement official in Sullivan County at all times relevant to the investigation into and prosecution of Plaintiff, (*id.* ¶¶ 136–37).

During 2010–2011, the MPD sought to hire a new officer and sought the cooperation of John LiGreci ("LiGreci"), the Village Manager for Monticello, and Carolyn Hill ("Hill"), the Personnel Director for Sullivan County, to begin the hiring process. (*Id.* ¶ 40.) Pursuant to the New York Civil Service hiring guidelines, applicants for police officer positions must pass the New York State Civil Service test. (*Id.* ¶ 41.) If applicants pass the test they are put on a civil service list for consideration when openings arise. (*Id.*) Kariem McCline ("McCline") applied, qualified for, and was placed on the civil service list for consideration for future openings at the MPD and was included on a list of qualified applicants generated by Hill to fill the request for a new police officer. (*Id.* ¶ 42.)

As Village Manager, LiGreci served as a supervisor to the MPD Police Chief. (*Id.* ¶ 56.) LiGreci ordered Solomon to conduct a background investigation into McCline, as part of the hiring process. (*Id.* ¶ 57.) Plaintiff alleges that Monticello Defendants were aware that LiGreci, as Village Manager, had the sole authority to make hiring decisions for the municipal departments, including the MPD. (*Id.* ¶ 55.)[1] Plaintiff alleges he believed it was within

---

[1] Plaintiff further alleges that "[n]o law tasked any Defendant with the authority to conduct the background investigation" (Am. Compl. ¶ 59), "Monticello Defendants knew that no law tasked Solomon with the responsibility to conduct a [b]ackground [i]nvestigation," (*id.* ¶ 44), and that the "MPD had no independent duty or authority to conduct background investigations into MPD candidates," (*id.* ¶ 61). Inasmuch as Plaintiff is alleging what laws applied to the various Defendants in their official capacities, the Court does not have to accept these conclusions of law as true. *See Andino v. Fischer*, 698 F. Supp. 2d 362, 375 (S.D.N.Y. 2010) (holding that in reviewing a motion to dismiss "a court does not . . . have to accept as true conclusions of law or unwarranted deductions of fact") (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)).

LiGreci's authority to commence and halt background investigations, (*id*. ¶ 54), and he was not aware of Solomon having any independent authority to conduct a background investigation, (*id*. ¶ 58).

Solomon created a background investigation procedure to use in investigating McCline. (*Id*. ¶ 43.) Plaintiff alleges that Monticello Defendants knew that Solomon had created the procedure he was using to investigate McCline, (*id*. ¶¶ 45, 62), after receiving the directive from LiGreci to begin the background investigation, (*id*. ¶ 63).[2] Solomon testified that he made up his mind that McCline was not qualified to be a police officer from the beginning of the background investigation. (*Id*. ¶ 46.) The Amended Complaint does not specify where Solomon testified to this effect.

Feliciano participated in the background investigation into McCline by interviewing community members. (*Id*. ¶ 47.) He asked some community members whether they knew if McCline associated with "undesirable people" and lived with a partner "out of wedlock." (*Id*.) LiGreci received a complaint from at least one community member that offensive questions were being asked as part of the investigation into McCline. (*Id*. ¶¶ 48, 64.) Thereafter, LiGreci confronted Solomon about the inappropriate questions and the length of time the background investigation was taking. (*Id*. ¶ 65.) LiGreci then halted the background investigation because it was proceeding in an inappropriate manner and was taking too long to complete. (*Id*. ¶ 49.)

---

[2] Plaintiff alleges that Monticello Defendants knew "there was no publication, regulation, protocol, or law directing Solomon to conduct background investigations or instructing how to conduct such background investigations." (Am. Compl. ¶ 63). Inasmuch as Plaintiff alleges what the application and meaning of such laws and regulations was or should be, the Court does not accept this allegation as true. *See Andino*, 698 F. Supp. 2d at 375. The Court understands Plaintiff to be alleging that Monticello Defendants did not believe Solomon had any independent authority to conduct the background investigation other than at the instruction of LiGreci and that Solomon created the background investigation procedure of his own accord without oversight or guidance.

Plaintiff did not personally compel Solomon in any way to stop the background investigation into McCline. (*Id*. ¶ 71.)

Plaintiff alleges that each Monticello Defendant was aware that LiGreci had the authority to halt the background investigation into McCline, (*id*. ¶ 67), and that therefore Monticello Defendants knew that LiGreci's order to stop the investigation could not possibly be "unauthorized" or "stretched into being criminal," (*id*. ¶ 69). Plaintiff alleges that Monticello Defendants "knew no crime was committed" and that "LiGreci acted within his power." (*Id*. ¶ 70.)

### 2. Monticello Defendants' Contact with Farrell

Plaintiff alleges that despite their knowledge that no crime had been committed, Monticello Defendants falsely informed Farrell "and misled him into believing" that LiGreci had improperly ordered them to stop the McCline background investigation, and that Plaintiff was an accessory to the crime. (*Id*. ¶ 72.)

Until his retirement on March 1, 2012, Solomon compiled the investigative file regarding McCline's background check. (*Id*. ¶ 73b.) Upon his retirement, Solomon turned this file over to Johnstone who took over as acting police chief. (*Id*. ¶¶ 73a, 73g.) Johnstone spoke with Solomon about the background investigation. (*Id*. ¶ 73i.) Until his retirement, "Solomon was in regular communication with Farrell regarding things that were going on in the Village of Monticello." (*Id*. ¶ 73c.) During that time Solomon informed Farrell that he felt "threatened by" Plaintiff with regard to McCline's application. (*Id*. ¶ 73d.) Prior to Johnstone taking over as police chief, Feliciano was responsible for the background investigation. (*Id*. ¶ 73f.) Upon Johnstone taking over, Feliciano prepared a final memorandum and completed the background investigation. (*Id*. ¶ 73h.)

On July 25, 2012, a criminal investigation began into McCline's application process. (*Id.* ¶ 73j.) As part of the criminal investigation, Johnstone provided Farrell information about the McCline hiring process. (*Id.* ¶ 73k.) Johnstone spoke to Farrell on a daily basis between the time he became acting police chief in March 2012, and the time the criminal investigation began in July 2012. (*Id.* ¶ 73m.) Johnstone also met with Defendant Farrell in person. (*Id.*) Plaintiff alleges that during these conversations, Johnstone falsely informed Farrell that Plaintiff was engaged in criminal activity. (*Id.* ¶ 73l.) Plaintiff alleges that Farrell initiated and manufactured the criminal investigation "for purposes of bringing about the subsequent criminal charges against Plaintiff and LiGreci." (*Id.* ¶ 87.)

### 3.  LiGreci's Directive to Johnstone to Answer Questions

After the initiation of the criminal investigation, LiGreci learned that the Village of Monticello faced potential civil litigation from McCline for the discriminatory fashion in which "his application was processed and his background investigation was conducted." (*Id.* ¶ 83.) LiGreci presented Solomon, and subsequently Johnstone, "with a list of questions to answer regarding the background investigation in preparation for the possible civil litigation." (*Id.* ¶ 84.)

After Johnstone received the directive from LiGreci, he consulted with Farrell, who informed him that there was an ongoing criminal investigation into McCline and LiGreci. (*Id.* ¶ 86.) Johnstone subsequently refused to provide the answers to LiGreci "under the guise of avoiding interference with the allegedly ongoing criminal investigation." (*Id.* ¶ 88.) Johnstone wrote answers to LiGreci's questions but submitted them to the then acting MPD Chief Mir on the day they were due to LiGreci. (*Id.* ¶ 92.) Johnstone's answers were immediately seized by investigators for the Sullivan County District Attorney's Office at Farrell's directive. (*Id.* ¶ 93.) After Plaintiff was indicted with McCline and LiGreci, Johnstone eventually testified at

Plaintiff's trial that he never informed LiGreci of the ongoing criminal investigation as he did not want certain people, including Plaintiff, to learn that there was a criminal investigation.  (*Id.* ¶ 89.)

Plaintiff alleges that LiGreci was authorized to direct Johnstone to provide answers to questions related to McCline's background investigation, as it was the subject of potential civil litigation against the Village of Monticello.  (*Id.* ¶ 103.)  Plaintiff further alleges that Defendants knew that LiGreci's order to Johnstone to answer questions regarding the McCline background investigation could not be construed as an illegal interference with the criminal investigation because the Defendants specifically acted to keep the fact of any such criminal investigation from LiGreci and Plaintiff.  (*Id.* ¶¶ 95, 99.)  Defendants thus could not have believed that LiGreci knew that his order to Johnstone to answer questions regarding the McCline background investigation was unauthorized when he made it because there was an ongoing criminal investigation.  (*Id.* ¶ 97.)  Plaintiff further alleges that Monticello Defendants had no reason to believe, and it was impossible for any of them to have concluded, that Plaintiff knew, prior to LiGreci's directive, that a criminal investigation had been commenced and that LiGreci no longer had the authority to order Johnstone to answer the questions.  (*Id.* ¶ 101.)  Nonetheless, Monticello Defendants informed Farrell that Plaintiff had acted as an accessory to LiGreci's order.  (*Id.* ¶ 96.)

Defendants accused LiGreci and Plaintiff of interfering with the MPD's independent duty to conduct background investigations into police officer candidates.  (*Id.* ¶ 74.)  Defendants allegedly provided these false statements to Farrell knowing that there was no basis to support such accusations.  (*Id.* ¶ 112.)  Specifically, Plaintiff alleges that Monticello Defendants misled Farrell by claiming Plaintiff coerced them and interfered with their investigation.  (*Id.* ¶ 119.)

Plaintiff alleges he was charged and prosecuted on the basis of these false allegations. (*Id*. ¶ 109.)

### 4. Monticello Defendants' Motives

Defendants allegedly created the criminal investigation into McCline to shield themselves from having to answer LiGreci's lawful inquiries into how they conducted the background investigation. (*Id.* ¶ 104.) Plaintiff further alleges that Solomon, Johnstone, and Feliciano fabricated the charges against him in order to advance their own political and professional careers or did so for personal revenge. (*Id*. ¶ 76.) Plaintiff points to the fact that Solomon ran for his trustee seat in 2014 and ran for Mayor of the Village of Monticello in 2016, (*id*. ¶ 77), Johnstone was promoted to the position of Lieutenant with the MPD, (*id*. ¶ 78), and Feliciano started working for the Sullivan County District Attorney's Office, (*id*. ¶ 79).

### 5. Farrell's Participation and Motives

Plaintiff alleges that Farrell participated in the fabrication of the accusations against him during the pre-arrest investigation stage, and that he acted as an investigator rather than a court advocate in doing so. (*Id*. ¶¶ 139, 140.) On July 30, 2012, Farrell sent a letter to Hill, the Commissioner of the Sullivan County Personnel Department, (*id*. ¶ 142), informing her that he had spoken to Johnstone and Solomon about McCline's application and that they wanted him to be disqualified from the MPD job for which he had applied, (*id*. ¶ 143). Farrell allegedly interfered with McCline's hiring process in order to bolster the anticipated allegations against Plaintiff. (*Id.* ¶ 141.) Farrell, Solomon, Johnstone, and Feliciano allegedly worked together to manufacture the investigative file regarding the McCline background investigation so that they could use it to allege that Plaintiff was guilty by association. (*Id*. ¶¶ 145, 149.) Farrell allegedly

engaged in these actions in order to manufacture a high profile case to gain media attention and to advance his own career and profile. (*Id*. ¶ 147.)

### 6. Plaintiff's Indictment, Trials, and the Reversal of His Conviction

On September 19, 2012, Johnstone testified at the grand jury against Plaintiff. (*Id*. ¶ 73n.) On November 8, 2012, Plaintiff was indicted by a Sullivan County Supreme Court Grand Jury, (*id*. ¶ 28), for acting in concert with LiGreci to commit two counts of Official Misconduct, (N.Y. Penal Law § 195.00(1)), and two counts of Coercion in the First Degree, (N.Y. Penal Law § 135.65(2)). Official Misconduct is a misdemeanor, and Coercion in the First Degree is a felony. (Am. Compl. ¶ 22.) The indictment alleged that Plaintiff acted as an accessory to LiGreci, who allegedly (1) used his executive authority to stop Solomon from conducting a background investigation into McCline and (2) ordered Johnstone to answer certain questions regarding that same background investigation into McCline. (*Id*. ¶ 23.) In the criminal matter, LiGreci and McCline were Plaintiff's co-Defendants. (*Id*. ¶ 30.)

The first trial commenced on May 6, 2013 and continued until a mistrial was declared on May 9, 2013. (*Id*. ¶ 31.) Subsequently, LiGreci pled guilty and McCline's case was severed. (*Id*. ¶ 32.) On June 10, 2013, a retrial against Plaintiff alone began and on July 8, 2013 he was found guilty on all four counts. (*Id*. ¶ 33.)

Plaintiff alleges he suffered *Brady*, *Rosario*, and due process violations during both trials because Monticello Defendants withheld exculpatory and impeachment materials. (*Id*. ¶¶ 122, 128–29, 130.) Feliciano was a key witness for the prosecution at Plaintiff's criminal trial and he testified that Plaintiff obstructed the background investigation into McCline. (*Id*. ¶ 125.) Plaintiff alleges Monticello Defendants failed to disclose *Brady* and *Rosario* material including recorded conversations between Feliciano and members of the community taken during the

McCline background investigation. (*Id.* ¶ 120.) Monticello Defendants also allegedly failed to provide Farrell, at any time prior to the Feliciano's trial testimony, a secretly recorded conversation ("Mack recording") between Feliciano and Mrs. Mack, a witness for the defense in Plaintiff's criminal trial. (*Id.* ¶ 121.) As a result, Plaintiff was not able to cross-examine Feliciano regarding possible contradictions between the recording and Feliciano's testimony at both trials, (*id.* ¶ 124), and was thus denied the opportunity to impeach a key state witness, (*id.* ¶ 127). Plaintiff alleges that Monticello Defendants purposely failed to disclose this recording to Farrell in an attempt to continue the fraudulent criminal prosecution which they had set in motion. (*Id.* ¶ 123.)

On January 30, 2014, Plaintiff was sentenced to six months of incarceration, five years of probation, and 500 hours of community service. (*Id.* ¶ 34.) Plaintiff served five days in jail. (*Id.* ¶ 35.) On January 12, 2016, the Third Department of the New York State Supreme Court Appellate Division reversed Plaintiff's conviction. (*Id.* ¶ 38.)

### B. Procedural History

Plaintiff filed his Complaint against all Defendants on December 29, 2016. (*See* Compl. (Dkt. No. 1).) On January 24, 2017, counsel for Farrell and the County of Sullivan submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Cheryl A. McCausland, Esq. to Court (Dkt. No. 21).) On January 27, 2017, counsel for Plaintiff submitted a letter opposing Farrell's request. (*See* Letter from Jessica Massimi, Esq. to Court (Dkt. No. 24).) On January 30, 2017, counsel for Monticello Defendants and the Village of Monticello requested an extension to file an answer or pre-motion letter. (*See* Letter from David L. Posner, Esq. to Court (Dkt. No. 25).) Thereafter, the Court scheduled a pre-motion conference and set a deadline for the filing of their pre-motion letters. (*See* Dkt. Nos. 27–29).

On February 27, 2017, counsel for Monticello Defendants and the Village of Monticello submitted a pre-motion letter requesting permission to file a Motion To Dismiss. (*See* Letter from David L. Posner, Esq. to Court (Dkt. No. 34).) On March 2, 2017, counsel for Plaintiff submitted a letter opposing Monticello Defendants' request. (*See* Letter from Jessica Massimi, Esq. to Court (Dkt. No. 35).) A pre-motion conference was held on March 9, 2017. (*See* Dkt. (entry for March 9, 2017).) Plaintiff filed his Amended Complaint on April 17, 2017. (*See* Am. Compl.) Notably, the Village of Monticello and the County of Sullivan were no longer listed as defendants in the Amended Complaint. (*See id.*)

On May 1, 2017, counsel for Farrell again submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Steven C. Stern, Esq. to Court (Dkt. No. 42).) On May 6, 2017, counsel for Plaintiff submitted a letter opposing Farrell's request. (*See* Letter from Jessica Massimi, Esq. to Court (Dkt. No. 43).) Counsel for Monticello Defendants also filed a pre-motion letter on May 12, 2017. (*See* Letter from David L. Posner, Esq. to Court (Dkt. No. 44).). On May 16, 2017, counsel for Plaintiff submitted a letter opposing Monticello Defendants' request in its entirety. (*See* Letter from Jessica Massimi, Esq. to Court (Dkt. No. 45).) A pre-motion conference was held on June 27, 2017 and the Court entered a briefing schedule. (*See* Dkt. (entry for June 27, 2017); Motion Scheduling Order (Dkt. No. 47).)

On September 1, 2017, Monticello Defendants filed their Motion To Dismiss and accompanying papers. (*See* Monticello Defs.' Not. Of Mot.; Aff. of David L. Posner ("Posner Aff.") (Dkt. No. 51); Monticello Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Monticello Defs.' Mem.") (Dkt. No. 52).) Farrell filed his Motion To Dismiss and accompanying papers that same day. (*See* Not. Of Mot. (Dkt. No. 53); Aff. of Steven C. Stern ("Stern Aff.") (Dkt. No. 54); Farrell's Mem. of Law in Supp. of Mot. To Dismiss ("Farrell's Mem.") (Dkt. No. 55).)

Plaintiff filed his Opposition to Farrell's Motion to Dismiss on November 24, 2017. (*See* Pl.'s Mem. of Law in Opp'n to Farrell's Mot. To Dismiss ("Pl.'s Mem. re Farrell") (Dkt. No. 60); Decl. Of Jessica Massimi ("Massimi Decl. re Farrell") (Dkt. No. 61).) Plaintiff filed his Opposition to Monticello Defendants' Motion To Dismiss that same day. (*See* Pl.'s Mem. of Law in Opp'n to Monticello Defs.' Mot. To Dismiss ("Pl.'s Mem. re Monticello Defs.") (Dkt. No. 62); Decl. Of Jessica Massimi ("Massimi Decl. re Monticello") (Dkt. Nos. 63–65)).

Farrell filed his Reply on December 15, 2017. (*See* Farrell's Reply Mem. Of Law in Further Supp. of Mot. ("Farrell's Reply") (Dkt. No. 68).) Monticello Defendants filed their Reply that same day. (*See* Monticello Defs.' Reply Mem. Of Law in Further Supp. of Mot. ("Monticello Defs.' Reply") (Dkt. No. 69).)

C.  Materials Considered

1.  Standard

As a threshold matter, the Court considers the proper treatment of exhibits submitted by Defendants and Plaintiff in support of their Motions and Opposition. The parties have submitted, and ask the Court to consider, dozens of exhibits that are extraneous to the Amended Complaint.[3]

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). "To go beyond the allegations in the [c]omplaint would convert

---

[3] Counsel for Monticello Defendants submitted 16 exhibits with their Motion to Dismiss. (*See* Posner Aff.) Counsel for Farrell submitted six exhibits with her Motion to Dismiss. (*See* Stern Aff.) Counsel for Plaintiff submitted eight exhibits with her Opposition to Farrell's Motion, (Massimi Decl. re Farrell), and nine exhibits with his Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs.).

the . . . motion to dismiss into one for summary judgment . . . ." *Thomas v. Westchester Cnty. Health Care Corp*., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). There are a few notable exceptions to this rule. In addition to the Complaint, a court ruling on a Rule 12(b)(6) motion "may consider . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, *Inc.,* 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

"To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas*, 232 F. Supp. 2d at 275. Additionally, even if not attached or incorporated by reference, a document upon which the complaint "solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis and internal quotation marks omitted). Documents are "integral" where the plaintiff had to rely on their content "in order to explain what the actual unlawful course of conduct was on which the [d]efendants embarked." *Thomas*, 232 F. Supp. 2d at 276; *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint"); *Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (same).

The Court is also entitled to take notice of matters of public records. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on

matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes"); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . ."). The public records courts may consider include dispositions in criminal cases. *See, e.g.*, *Wims v. New York City Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (noting that "'a district court may rely on matters of public record in deciding a motion to dismiss . . . including arrest reports, criminal complaints, indictments and criminal disposition data."); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-CV-3099, 2001 WL 300735, at *9 n.7 (S.D.N.Y. Mar. 27, 2001) ("With respect to materials from the [s]tate [c]ourt [a]ction, the [c]ourt may take judicial notice of the relevant pleadings, motion papers, orders, and judgments in the [s]tate [c]ourt [a]ction without converting [the defendant's] motion to one for summary judgment.").

However, in taking judicial notice of such public records, the Court does so only to establish "the fact of such litigation," not for the truth of the matters asserted in that proceeding. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." (internal quotation marks omitted)); *see also Roth*, 489 F.3d at 509 ("If the court takes judicial notice, it does so in order to determine *what* statements [a document] contained—but *again not for the truth of the matters asserted*." (internal quotation marks omitted)).

## 2. Farrell's Exhibits

Most exhibits submitted by Farrell are public records of which the Court may take judicial notice. For example, Farrell's Exhibit C is a copy of the Certificate of Conviction of

LiGreci. (Stern Aff. Ex. C ("LiGreci Certificate of Conviction").) Farrell's Exhibit D is a copy

of the transcript of LiGreci's plea allocution. (Stern Aff. Ex. D ("LiGreci Plea Allocution").)

Farrell's Exhibit E is a copy of the Certificate of Conviction of McCline. (Stern Aff. Ex. E

("McCline Certificate of Conviction").) Farrell's Exhibit F is a copy of the New York Supreme

Court's Memorandum and Order vacating Plaintiff's conviction in *People v. Hutchins*, 25

N.Y.S.3d 699 (App. Div. 2016). (Stern Aff. Ex. F ("Hutchins")). The Court considers these

public records in deciding Farrell's Motion, but only to establish the fact of such filings and what

they contained, not for the truth of the matter asserted therein. *See Global Network*, 458 F.3d at

157; *Roth*, 489 F.3d at 509.

 Farrell's Exhibit B is a copy of the July 30, 2012 letter from Farrell to Hill, (Stern Aff.

Ex. B ("Farrell Letter")), that Plaintiff expressly cites as an example of how Farrell investigated

him and fabricated allegations against him, (Am. Compl. ¶¶ 142–43). The Court rejects

Plaintiff's argument that the letter is not incorporated by reference merely because Plaintiff does

not quote from the letter. (Pl.'s Mem. re Farrell at 25). Plaintiff makes a "clear, definite and

substantial reference to the document," when he cites to and paraphrases the letter. *Thomas*, 232

F. Supp. 2d at 275. Plaintiff also relies on the letter to explain "what the actual unlawful course

of conduct was." *Id*. at 276. Thus, Court considers the Farrell Letter in deciding Farrell's

Motion.

### 3. Monticello Defendants' Exhibits

 Monticello Defendants' Exhibit B is an excerpt of Feliciano's trial testimony that they

include to correct a biographical fact regarding Feliciano's employment. (Posner Aff. Ex. B.)

Monticello Defendants' Exhibit P is an email exchange between the parties' counsel showing

Defendants attempted to correct this error. (Posner Aff. Ex. P.) Monticello Defendants argue

that their counsel contacted Plaintiff's counsel before the filing of the Amended Complaint to correct the biographical error but that the error was repeated in the Amended Complaint. (Monticello Defs.' Mem. 17–18.). Monticello Defendants do not point to any exception that would allow the Court to consider these exhibits. They do not argue that these exhibits are public records, nor that they are incorporated by reference, as indeed Plaintiff's Amended Complaint does not mention or rely on these transcript portions or emails. And, although the Court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," *Brass v. Am. Film Technologies, Inc*., 987 F.2d 142, 150 (2d Cir. 1993), "mere notice or possession is not enough," *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Chambers*, 282 F.3d at 153 (emphasis omitted). Monticello Defendants do not allege that Plaintiff relied on Exhibits B or P in drafting the Amended Complaint, and acknowledge that the failure to correct the biographical fact was likely an oversight. (Monticello Defs.' Mem. 17.) Monticello Defendants may not attempt to edit the Amended Complaint or to impeach Plaintiff by introducing extrinsic evidence at the Motion To Dismiss Stage. Therefore, the Court will not consider Exhibits B or P in deciding their Motion.

Monticello Defendants also submit a number of exhibits that are public records of which the Court may take judicial notice. For example, Monticello Defendants' Exhibit C is a copy of Plaintiff's indictment. (Posner Aff. Ex. C ("Indictment")). Exhibit D is a copy of the New York County Court decision in Plaintiff's criminal case granting a mistrial. (Posner Aff. Ex. D ("Mistrial Decision")).) Exhibit O is the index to the record on appeal in Plaintiff's criminal case. (Posner Aff. Ex. O ("Index")).) The Court considers these public records in deciding this motion,

but only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein. *See Global Network*, 458 F.3d at 157; *Roth*, 489 F.3d at 509.[4]

Monticello Defendants' Exhibits E through L are excerpts of Solomon, Johnstone, and Feliciano's grand jury testimony. (Posner Aff. Ex. E–L). Monticello Defendants argue that these excerpts are "integral" to the Amended Complaint because Plaintiff makes specific and general references to Monticello Defendants' allegedly false testimony that led to his prosecution. (Monticello Defs.' Mem. 16.) Documents are "integral" where the plaintiff had to rely on the content of them "in order to explain what the actual unlawful course of conduct was on which the [d]efendants embarked." *Thomas*, 232 F. Supp. 2d at 276; *see also Munno*, 391 F. Supp. 2d at 269 (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint"); *Gantt*, 2017 WL 1192889, at *14 (same).

The Court notes that most of Plaintiff's references to Monticello Defendants' testimony are general and do not point to any specific portion of the grand jury or trial transcript. For example, Plaintiff alleges that Johnstone testified in the grand jury against Plaintiff on September 19, 2012, but does not specify the contents of his testimony. (Am. Compl. ¶ 73n.) Plaintiff also generally alleges that each of Monticello Defendants made false statements to the grand jury, (*id.* ¶ 164), and that each of the Defendants falsely alleged that LiGreci and Plaintiff interfered with the MPD's background investigations into McCline, (*id.* ¶ 74). It is not at all clear to the Court

---

[4] Monticello Defendants' Exhibit M is a copy of LiGreci's Plea, (Posner Aff. Ex. M), which the Court has explained it will consider as a matter of public record as Farrell's Exhibits C and D. The Court takes notice of Monticello Defendants' Exhibit N, which is a copy of a newspaper article describing McCline's conviction. (Posner Aff. Ex. N.) *See Condit v. Dunne*, 317 F. Supp. 2d 344, 357–58 (S.D.N.Y.2004) (taking judicial notice of newspaper articles submitted by the defendant in conjunction with his motion to dismiss, "but only for a limited purpose" and not for the truth of the articles' content). The Court has already explained it will consider Farrell's Exhibit E, which is a copy of McCline's Certificate of Conviction, as a matter of public record.

that Plaintiff relied on specific excerpts of grand jury testimony to make general allegations that Monticello Defendants fabricated accusations against him.

Plaintiff mentions specific portions of testimony in three instances. First, Plaintiff alleges that Feliciano was a key witness for the prosecution at Plaintiff's criminal trial, (*id.* ¶ 125), and that he testified that Plaintiff obstructed the background investigation into McCline, (*id.* ¶ 126). This is a reference to trial testimony, however, and Monticello Defendants only offer excerpts of grand jury testimony. Second, Plaintiff alleges that Solomon testified that he made up his mind that McCline was not qualified to be a police officer from the beginning of the background investigation, (*id.* ¶ 46), but does not specify whether this was part of Solomon's grand jury or trial testimony. Third, Plaintiff alleges Johnstone testified at trial that he never informed LiGreci of the ongoing criminal investigation as he did not want certain people, including Plaintiff, to learn about the criminal investigation. (*Id.* ¶ 89.) Exhibits E through L are all excerpts of *grand jury testimony* and it does not follow that Plaintiff "relied heavily upon" them to make allegation about Feliciano and Johnstone's *trial testimony* and Solomon's *unspecified testimony*. Even if Plaintiff had quoted directly from or relied upon specific portions of the grand jury testimony, it is not clear that these excerpts were integral or incorporated by reference. *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) (holding that "limited quotation does not constitute incorporation by reference" and that it was therefore improper for court to consider extraneous documents submitted by the defendant in support of motion to dismiss without converting motion into a motion for summary judgment and giving the plaintiff opportunity to submit Rule 56 materials); *see also Ying Li v. City of New York*, 246 F. Supp. 3d 578, 596 (E.D.N.Y. 2017) (declining to take judicial notice of grand jury minutes because the plaintiff sought to rely on the substance and truth of the testimony and not just the fact of the testimony).

4.  Plaintiff's Exhibits

Plaintiff makes clear he does not wish to convert the Motions into summary judgment motions without the opportunity for the Parties to file Rule 56.1 Statements, but nonetheless submits exhibits in his Opposition to the Farrell Motion, (Massimi Decl. re Farrell 1–2), and Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. 1–2), in order to rebut the evidence offered by Defendants. Several of the exhibits Plaintiff submits were not even alluded to in the Amended Complaint and will not be considered.[5]

Several of Plaintiff's exhibits tangentially relate to Plaintiff's claim that he suffered *Brady* and *Rosario* violations when Monticello Defendants withheld exculpatory and impeachment materials. (Am. Compl. ¶¶ 119–21, 182(e).) Plaintiff's Exhibit 3 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 3.), and Plaintiff's Exhibit 6 in Opposition to Farrell's Motion, (Massimi Decl. re Farrell Ex. 6), are copies of a *Rosario* Order Sanctioning Farrell. The Amended Complaint never mentions that Farrell was sanctioned. Plaintiff's Exhibit 5 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 5), and Plaintiff's Exhibit 5 in Opposition to Farrell's Motion, (Massimi Decl. re Farrell Ex. 5), are copies of the transcript of the trial proceeding regarding the *Rosario* and *Brady* violations. The Amended Complaint never mentions that the *Brady* and

---

[5] Plaintiff's Exhibit 1 in Opposition to Monticello Defendants' Motion is Farrell's opening statement in Plaintiff's criminal trial. (Massimi Decl. re Monticello Defs. Ex. 1.) Plaintiff's Exhibit 2 in Opposition to Monticello Defendants' Motion is a partial transcript of Plaintiff's grand jury testimony. (Massimi Decl. re Monticello Defs. Ex. 2.) Plaintiff's Exhibit 4 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 4), and Plaintiff's Exhibit 3 in Opposition to Farrell, (Massimi Decl. re Farrell Ex. 3.), are partial transcripts of Hill's trial testimony. Farrell's opening statement, Plaintiff's grand jury testimony, and Hill's trial testimony were not mentioned in the Amended Complaint. Plaintiff does not point to any exception that would allow the Court to consider these extraneous materials. The Court will not consider these exhibits.

*Rosario* violations were discussed at length during trial. The fact that Plaintiff broadly alleges *Brady* and *Rosario* violations does not show that he "relied heavily upon," the *Rosario* order or the trial transcript in framing his Amended Complaint. *See Munno*, 391 F. Supp. 2d at 269, *Gantt*, 2017 WL 1192889, at *14.[6] The Court will not allow Plaintiff to cherry pick portions of the record that bolster his claims and in effect edit his Amended Complaint through these exhibits.

Plaintiff's Exhibit 6 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 6), and Plaintiff's Exhibit 4 in Opposition to Farrell's Motion, (Massimi Decl. re Farrell Ex. 4), are copies of a partial transcript of Johnstone's trial testimony. Plaintiff's Exhibit 7 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 7), and Plaintiff's Exhibit 2 in Opposition to Farrell's Motion, (Massimi Decl. re Farrell Ex. 2), are copies of a partial transcript of Solomon's trial testimony. The Amended Complaint makes two specific references to trial testimony. Feliciano testified at trial that Plaintiff obstructed the background investigation into McCline, (*id*. ¶ 126), and Johnstone testified at trial that he never informed LiGreci of the ongoing criminal investigation as he did not want certain people, including Plaintiff, to learn about the criminal investigation, (*id*. ¶ 89). If Plaintiff had

---

[6] Plaintiff's Exhibit 9 in Opposition to Monticello Defendants' Motion, (Massimi Decl. re Monticello Defs. Ex. 3), and Plaintiff's Exhibit 7 in Opposition to Farrell's Motion, (Massimi Decl. re Farrell Ex. 7), are copies of an email exchange between counsel regarding a possible *Brady* order. Plaintiff does not reference a *Brady* order or communications between counsel in the Amended Complaint. Nor does Plaintiff point to any exception that would allow the Court to consider these extraneous emails. Plaintiff's Exhibit 8 in Opposition to Farrell's Motion is a July 5, 2017 letter from Farrell's counsel producing the allegedly withheld Mack recordings. (Massimi Decl. re Farrell Ex. 8.) Nowhere in the Amended Complaint does Plaintiff mention the eventual production of the Mack recordings and he offers no explanation as to why the Court should consider these extraneous communications that took place after this suit was filed. Therefore the Court will not consider these exhibits.

offered excerpts of trial transcripts that related strictly to Feliciano and Johnstone's specific statements, and those specific statements only, it would be conceivable that those excerpts were incorporated by reference because the Amended Complaint makes a "clear, definite and substantial reference to" those excerpts and uses those excerpts to explain "what the actual unlawful course of conduct was." *Thomas*, 232 F. Supp. 2d at 275. The portions of transcript that Plaintiff excerpts, however, go well beyond Feliciano and Johnstone's specific statements and include testimony that Plaintiff did not, but presumably could have, mentioned in the Amended Complaint. The Court will not allow Plaintiff to introduce more detail and edit his Amended Complaint through these extraneous documents. The Court will not consider these exhibits.

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B. Analysis

1. Monticello Defendants

Plaintiff alleges that Monticello Defendants subjected him to malicious prosecution, denied him the right to a fair trial, violated his due process rights, and committed *Brady*

violations against him, (Am. Compl. ¶¶ 161–65), and that they conspired with each other and

Farrell to do so, (*id*. ¶¶ 180–82). Monticello Defendants argue that they are entitled to absolute

immunity for their trial and grand jury testimony and their conversations with prosecutors, as

public officials they are entitled to qualified immunity for their entire alleged course of conduct,

and an immunity determination notwithstanding, that Plaintiff fails to state a claim against them.

(Monticello Defs.' Mem; Monticello Defs.' Reply.)

<u>a. Absolute Witness Immunity for Grand Jury and Trial Testimony</u>

Monticello Defendants argue that they enjoy absolute immunity against all claims that are

based upon their trial testimony. (Monticello Defs.' Mem. 22–23.) Trial witnesses, including

government officials, have absolute immunity with respect to any § 1983 claims arising from

their testimony, even if it is alleged that such testimony was perjured. *See Briscoe v. LaHue*, 460

U.S. 325, 335–36 (1983) (affirming dismissal of § 1983 claims arising from police officers'

perjurious testimony during trial); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (holding that

the plaintiff's due process claim was barred because the defendant, as a witness, was absolutely

immune from liability for the evidence he furnished in the proceeding at issue); *Deraffele v. City

of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *12–13 (S.D.N.Y. March 30, 2016)

(noting that an allegation that the defendants gave perjured testimony was not sufficient to render

the defendants liable under § 1983); *Anilao v. Spota*, 774 F. Supp. 2d 457, 506 (E.D.N.Y. 2011)

(same). This absolute immunity extends to "preparatory activity" including preliminary

discussions between a witness and prosecutor discussing the substance of the witness's

testimony. *See O'Neal v. City of New York*, 196 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2016)

(holding that absolute immunity for witness testimony extended to preparatory activity);

*Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 642–43 (S.D.N.Y. 2015) (same).

The Court finds that Monticello Defendants are entitled to absolute immunity from liability for the testimony they provided at Plaintiff's trial and for information they provided during preparatory meetings discussing that trial testimony. The Court will not consider trial testimony in deciding this motion. However, Plaintiff only cites specifically to trial testimony on a few occasions, and does so in cursory fashion. (Am. Comp. ¶¶ 89, 125–26.) None of Plaintiff's claims is entirely based on trial testimony so that even excluding trial testimony is not dispositive in deciding the viability of any of Plaintiff's claims.

Monticello Defendants also argue that they enjoy absolute immunity against all claims based upon their grand jury testimony. Grand jury witnesses generally "enjoy the same immunity as witnesses at trial." *Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012). The *Rehberg* Court did not distinguish between law enforcement and lay witnesses, *id*. at 367–68, but made clear that absolute immunity does not extend "to all activity that a witness conducts outside of the grand jury room," such as falsifying affidavits and fabricating evidence, *id*. at 370 n.1 (emphasis is omitted). Accordingly, courts in the Second Circuit have declined to grant absolute immunity to law enforcement officers for alleged misconduct, independent of a defendant's grand jury testimony, such as falsifying statements and evidence. *See, e.g.*, *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (affirming denial of absolute immunity to a police officer who testified before the grand jury, but who also allegedly falsified police reports, made false statements to the district attorney, and fabricated evidence, finding that the plaintiff's § 1983 claims were based on alleged misconduct that was independently actionable "prior to and independent of [the officer's] perjurous grand jury appearance"); *Garnett v. City of New York*, No. 13-CV-7083, 2014 WL 3950904, at *13 (S.D.N.Y. Aug. 13, 2014) (declining to grant absolute immunity to grand jury witness who allegedly provided fabricated statements to police

officer that formed the basis of the criminal complaint); *Maldonado v. City of New York*, No. 11-CV-3514, 2014 WL 787814, at *10 (S.D.N.Y. Feb. 26, 2014) (declining to grant absolute immunity to police officers who testified before grand jury to the same underlying facts where an allegedly false narrative of events provided to another officer preceding the plaintiff's arrest).

The Court finds that Monticello Defendants are not entitled to absolute immunity from liability for their grand jury testimony. Plaintiff alleges that Monticello Defendants engaged in exactly the type of conduct, namely the fabrication of false statements and evidence, that courts in the Second Circuit have refused to immunize. *See Garnett*, 2014 WL 3950904, at *13; *Maldonado*, 2014 WL 787814, at *10. In the present case, Plaintiff's "claim[s] exist [i]ndependently of the grand jury testimony" and are not "based on" that testimony. *Coggins*, 776 F.3d at 113. Plaintiff only cites specifically to grand jury testimony on two occasions, (Am. Comp. ¶¶ 182f, 73n), and alleges misconduct separate from Monticello Defendants' grand jury testimony, such as the withholding exculpatory evidence and fabricating a background investigation file during the criminal investigation.

### b. Malicious Prosecution

Monticello Defendants argue that Plaintiff fails to state a claim for malicious prosecution. (Monticello Defs.' Mem. 19–21.) "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). To prevail on a malicious prosecution claim under New York law, the plaintiff must show: "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated

in [the] plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (alterations and internal quotation marks omitted). "[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotations marks omitted)); *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 569 (S.D.N.Y. 2012) (same).

To satisfy the first element of a malicious prosecution claim, "it must be shown that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (citations and internal quotation marks omitted). "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000). In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints. *See, e.g.*, *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005); *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y.2014) (same). "Although there is a presumption that a prosecutor exercises independent judgement in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors . . . or when she withholds relevant and material information." *Mitchell*, 434 F. Supp. 2d at 226 (citations and internal quotation marks omitted); *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("Even if the intervening decision-maker

(such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").

"[P]robable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). "[A] presumption of probable cause . . . may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks omitted). Moreover, "a conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption which can be rebutted only by a showing that conviction itself was a result of fraud, perjury, or other unethical acts on the part of the defendant." *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (omitting internal citation). Plaintiff "bears the burden of proof in rebutting the presumption, and he must do so with more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Battisti v. Rice*, No. 10-CV-4139, 2017 WL 78891, at *9 (E.D.N.Y. Jan. 9, 2017) (internal quotation marks omitted); *see also Savino*, 331 F.3d at 73 (same).

"[M]alice does not have to be actual spite or hatred, 'but only a showing' that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Bertuglia*, 133 F. Supp. 3d at

634 (internal quotation marks omitted); *Fobbs v. City of New York*, No. 15-CV-6736, 2017 WL

2656207, at *6 (S.D.N.Y. June 19, 2017) (same).  A "lack of probable cause generally creates an

inference of malice," *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003), as does a

prosecution pursued with "reckless disregard of the rights of the plaintiff," *Manganiello*, 612

F.3d at 163 (internal quotation marks omitted), *see also Berry v. Marchinkowski*, 137 F. Supp. 3d

495, 536 (S.D.N.Y. 2015) (noting that "a jury may infer malice from the absence of probable

cause").

Favorable termination requires a plaintiff to "demonstrate a final termination of the

criminal proceeding in [his] favor, or at least not inconsistent with [his] innocence." *Scalpi v.

Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858955, at *11 (S.D.N.Y. Feb. 29, 2016)

(quoting *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 96 (E.D.N.Y. 2015)).  Here, because

Plaintiff's conviction was vacated, *Hutchins*, 25 N.Y.S.3d at 704, the matter terminated in

Plaintiff's favor.

Being free from unreasonable physical detention is a liberty interest under the Fourth

Amendment.  *See Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir. 1997) (holding that defendant who

was released post-arraignment, but ordered not to leave the state and required to make

approximately eight court appearances while his criminal proceeding was pending, had shown "a

seizure within the meaning of the Fourth Amendment").  Some courts have found "liberty

interests" to be implicated even in cases where there was no arrest or incarceration.  *See, e.g.*,

*Sassower v. City of White Plains*, 992 F. Supp. 652, 656 (S.D.N.Y. 1998) (finding that where a

plaintiff was required to appear in court on three occasions and "cut short" her travel, she had

raised "a genuine issue of fact as to the deprivation of liberty element" of her malicious

prosecution claim); *Willner v. Town of N. Hempstead*, 977 F. Supp. 182, 189 (E.D.N.Y. 1997)

(finding a seizure "[a]lthough there are no allegations of an arrest or an otherwise physical detention" because plaintiff "was required to make court appearances"). The Court concludes that because Plaintiff alleges he spent five days in jail, (Am. Compl. ¶ 35), his personal liberty interest was implicated. Whether Plaintiff can make out a malicious prosecution claim against Monticello Defendants thus depends on whether Defendants can overcome the presumption of probable cause, and whether Plaintiff properly alleges that they initiated a prosecution against him, and did so with malice.

### i. Solomon

Plaintiff makes numerous conclusory allegations about Monticello Defendants' knowledge and intentions. For example, Plaintiff alleges that despite the fact that each Monticello Defendant was aware that LiGreci had the authority to halt the background investigation into McCline, and that therefore LiGreci's order to stop the investigation was not criminal, (Am. Compl. ¶¶ 67, 69, 70), each nonetheless misled Farrell into believing LiGreci improperly coerced each of them into stopping the background investigation and that Plaintiff was an accessory, (*id.* ¶¶ 72, 96, 112, 119). Plaintiff also alleges that Monticello Defendants knew that an order by LiGreci to Johnstone to answer questions about the McCline background investigation was not criminal, (*id.* ¶¶ 95, 99), and that LiGreci and Plaintiff were unaware of the ongoing criminal investigation and thus could not have tried to interfere with it, (*id.* ¶¶ 97, 101), but that they nonetheless informed Farrell that Plaintiff had acted as an accessory to LiGreci's order, (*id.* ¶ 96). Plaintiff further alleges that Monticello Defendants purposely failed to disclose the Mack recording to Farrell in an attempt to continue the fraudulent criminal prosecution which they had set in motion. (*Id.* ¶ 123.) Monticello Defendants and Farrell allegedly manufactured

the McCline file so that they could use it to allege that Plaintiff was guilty by association. (*Id.* ¶¶ 145, 149.)

The only allegations with respect to Solomon, however, are that until his retirement Solomon compiled the investigative file regarding McCline's background check, (*id.* ¶ 73b); that upon his retirement, Solomon turned this file over to Johnstone, (*id.* ¶¶ 73a, 73g), and spoke with him about it, (*id.* ¶ 73i); that until his retirement, Solomon was in regular communication with Farrell regarding events in the Village of Monticello, (*id.* ¶ 73c.); and finally that Solomon informed Farrell that he felt threatened by Plaintiff with regard to McCline's application, (*id.* ¶ 73d.). Plaintiff does not allege that Solomon lied about feeling threatened by Plaintiff. He does not point to which fabricated statements or evidence were included in the McCline file by Solomon. Indeed, Plaintiff's allegations describe a police chief conducting an investigation and discussing that investigation with other law enforcement officials. Plaintiff has not identified any particular lie allegedly told by Solomon that led to his conviction. *See Savino*, 331 F.3d at 73 (noting that "mere conjecture and surmise" are insufficient to rebut the presumption of probable cause created by an indictment by a grand jury (internal quotation marks omitted)); *Battisti*, 2017 WL 78891, at *11 (holding that "unsupported allegations that" the defendants told multiple versions of a story, had materially changed their story, or failed to disclose exculpatory evidence are "not sufficient to overcome the presumption of probable cause resulting from a grand jury indictment"); *S.B. v. City of New York*, No. 14-CV-1021, 2016 WL 4530455, at *15 (E.D.N.Y. Aug. 29, 2016) (holding that allegations that fail to "suggest the nature of the purported misconduct" are "far too conclusory to rebut the presumption of probable cause that arose following the indictment"); *Stukes v. City of New York*, No. 13-CV-6166, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (finding "alleg[ations] that the [defendant] presented

false-facts to the grand jury, and that [the d]efendants failed to turn over exculpatory evidence for presentation to the grand jury" to be "conclusory statements [that] fail to overcome the presumption of probable cause." (alterations, citations, and internal quotation marks omitted)). Plaintiff also alleges that Monticello Defendants failed to turn over the Mack recording to Farrell, (*id*. ¶¶ 120–21), but he fails to allege that Solomon ever knew about that recording, had it in his possession, or had an opportunity to turn it over to Farrell and failed to do so.

Plaintiff fails to rebut the presumption of probable cause with respect to Solomon. He does not allege sufficient facts to indicate the conviction was "procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72; *see also* Elek, 815 F. Supp. 2d at 809. Therefore, the Court dismisses the malicious prosecution claim against Solomon.

"As probable cause is a complete defense to a claim of malicious prosecution, the Court does not reach the other elements of the malicious prosecution claim." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 575 (S.D.N.Y. 2015) (citing *Sullivan v. LaPlante*, No. 03-CV-359, 2005 WL 1972555, at *8 & n. 17 (N.D.N.Y. Aug. 16, 2005)).

### ii. Feliciano

Plaintiff makes the same general allegations against Feliciano as he does against Solomon, but adds that Feliciano was the officer who allegedly conducted the Mack interview and created that recording, (*id*. ¶¶ 120–21), and who also testified at Plaintiff's trial, (*id*. ¶ 125). Inasmuch as Plaintiff alleges that the Mack recording was suppressed, he successfully points to Feliciano as the officer who created the recording and who would have been in a position to

bring it to Farrell's attention.[7]  Thus, Plaintiff successfully rebuts the presumption of probable

cause, with respect to Feliciano because he alleges facts that his conviction may have been

"procured by . . . the suppression of evidence or other police conduct undertaken in bad faith."

*Savino*, 331 F.3d at 72.

However, Plaintiff's malicious prosecution claim against Feliciano fails because he

cannot satisfy the first element of a malicious prosecution claim, as he fails to allege how

Feliciano "played an active role in the prosecution."  *Mitchell*, 434 F. Supp. 2d at 227.  Plaintiff

alleges that both Solomon and Johnstone spoke and met with Farrell, (Am. Compl. ¶¶ 73c, 73d,

73l, 73m, 86), but he does not point to an instance when Feliciano reported to or spoke with

Farrell, much less that Feliciano ever gave Farrell advice or encouraged him to bring the case

against Plaintiff.  Because Plaintiff does not properly allege that Feliciano "initiated a

prosecution against" him, *Rentas*, 816 F.3d at 220, the Court dismisses the malicious prosecution

claim as to Feliciano.

### iii.  Johnstone

Plaintiff makes the same general allegations against Johnstone as he does against

Solomon and Feliciano, but in addition he alleges that in order to commit malicious prosecution,

Johnstone provided Farrell information about the McCline hiring process during the criminal

investigation, (Am. Compl. ¶ 73k), spoke to Farrell on a daily basis between the time he became

acting police chief in March 2012, (*id.* ¶ 73m), and the time the criminal investigation began in

July 2012, and also met with Farrell in person, (*id.*).  Plaintiff further alleges that during these

---

[7] Plaintiff also alleges that Feliciano was responsible for the McCline background investigation, (*id.* ¶ 73f), and eventually prepared the final memorandum regarding the investigation, (*id.* ¶ 73h).  Much like Plaintiff's description of Solomon's alleged misconduct, these allegations amount to no more than a description of a police officer conducting an investigation and writing a police report.

conversations, Johnstone misinformed Farrell that Plaintiff was engaged in criminal activity. (*Id.* ¶ 73l.) Johnstone was also the officer who alerted Farrell that LiGreci had instructed him to answer the list of questions related to the McCline investigation. (*Id.* ¶¶ 86, 92.) By alleging that Johnstone misinformed Farrell during the regular phone calls and the in-person meeting they had, Plaintiff plausibly points to "police conduct undertaken in bad faith" and thus rebuts the presumption of probable cause with respect to Johnstone. *Savino*, 331 F.3d at 72; *see also Elek*, 815 F. Supp. 2d at 808.

Plaintiff also plausibly alleges that Johnstone "initiated a prosecution against" him. *Rentas*, 816 F.3d at 220. In addition to making the conclusory allegation against all Monticello Defendants that they knowingly misinformed Farrell that a crime had been committed and that Plaintiff was an accessory to that crime, (Am. Compl. ¶¶ 67, 69, 70, 72, 95–96, 97, 101, 112, 119), Plaintiff also points to specific instances of Johnstone speaking with Farrell, allegedly passing him information about the investigation, and allegedly lying to him during those conversations in order to implicate Plaintiff, (*id.* ¶¶ 73k, 73l, 73m, 86, 92).

Plaintiff also properly alleges that Johnstone initiated the prosecution with malice. Plaintiff again makes several conclusory allegations, including that Monticello Defendants created the criminal investigation into McCline to shield themselves from inquiries into how they conducted his background investigation, (*id.* ¶ 104), and that they fabricated the charges against him in order to advance their own careers, (*id.* ¶ 76). But Plaintiff also alleges that Johnstone was promoted to the position of Lieutenant with the MPD and offers this fact to plausibly plead an improper motive. (*Id.* ¶ 78.) *See Bertuglia*, 133 F. Supp. 3d at 634 (noting that the malice element is satisfied by a "showing that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive). Moreover, "[a] lack of probable cause generally creates an

inference of malice." *Boyd*, 336 F.3d at 78. Although Plaintiff may face an uphill battle at the summary judgment or trial stage in substantiating this allegation and proving a connection between Johnstone's career trajectory and his involvement in Plaintiff's prosecution, at this stage Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, Monticello Defendants' motion to dismiss the malicious prosecution claim with respect to Johnstone is denied.

### c. Interaction of Malicious Prosecution, Fair Trial, and *Brady* Claims

Because Plaintiff brings claims for malicious prosecution, the denial of the right to a fair trial, and a *Brady* violation, the Court briefly considers the interaction and overlap between the legal standards for these claims and how Plaintiff attempts to use the same factual allegations about the fabrication of incriminating evidence and the withholding of exculpatory evidence in support of each.

### i. Fair Trial Claim Standard

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To state a fair trial right claim, a plaintiff must plausibly plead the following elements: "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130).

Probable cause is not a defense to a denial of fair trial claim. *See Heard v. City of New York*, 319 F. Supp. 3d 687, 697 (S.D.N.Y. 2018); *Overby v. Fabian*, No. 17-CV-3377, 2018 WL 3364392, at *11 (S.D.N.Y. July 10, 2018) (same). "Because probable cause is no defense to a denial of the right to a fair trial claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims." *Garnett*, 838 F.3d at 278; *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010) (noting that the Second Circuit has permitted "claims for both malicious prosecution and a denial of his right to trial based on the same alleged fabrication of evidence").

Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial. *See Longo v. Ortiz*, No. 15-CV-7716, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (holding that the plaintiff failed to state denial of fair trial claim where he alleged "he was denied the right to a fair trial . . . when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements . . . to be used against [the plaintiff] at trial as well as to a Supreme Court judge in an effort to secure a search warrant, indictment and conviction") (internal quotation marks omitted); *Harasz v. Katz*, 239 F. Supp. 3d 461, 493 (D. Conn. 2017) (holding that the plaintiff failed to state a denial of fair trial claim where he merely alleged that officers "did in fact participate in fabrication of evidence, ignored the truth when presented and chose what to bring as the truth . . . [and] did not want the truth to interfere with their witch hunt."). Instead plaintiffs must identify the actual fabrication. *See, e.g*, *Cunningham v. City of New York*, No. 17-CV-5124, 2018 WL 4168964, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing fair trial claim where the complaint failed to assert that arresting report contained a fabrication); *Harasz*, 239 F. Supp. 3d at 493–94 (finding the plaintiff failed to plausibly allege fabrication of evidence against officer who did not create any evidentiary

materials that were forwarded to prosecutors even if officer failed to conduct a thorough investigation).

Finally, in the context of a fabrication of evidence claim, the Second Circuit equates "the fraudulent omission of factual information . . . with the affirmative perpetration of a falsehood," and expressly disclaims any "plausible legal distinction between misstatements and omissions." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015).[8]

### ii. *Brady* Claim Standard

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). "There are three components of a true *Brady* violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Deanda*, 137 F. Supp. 3d at 577 (quoting *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (internal quotation marks omitted)); *see also Ambrose v. City of New York*, 623 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) (same).

"Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez v. City of New York*, 790 F.3d 368,

---

[8] The Court notes, however, that in the Second Circuit cases that Plaintiff and Defendants cite, the officers who were found to have "fabricated evidence" for purposes of a fair trial claim, did take some affirmative action toward preparing or creating the evidence later relied upon by prosecutors. *See, e.g.*, *Ricciuti*, 124 F.3d at 130 (holding that officers manufactured evidence by preparing a false report recounting a false confession from the plaintiff); *Garnett*, 838 F.3d at 275 (holding officer manufactured evidence where he falsified a written record of his own observations of the plaintiff's activity and created statements made by the plaintiff during a drug bust operation which false accounts were recorded in official police reports forwarded to the prosecutor).

376 n.4 (2d Cir. 2015). "[P]olice officers satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors," *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992), "unless there is some indication that the police have suppressed evidence," *McCaffrey v. City of New York*, No. 11-CV-1636, 2013 WL 494025, at *12 (S.D.N.Y. Feb. 7, 2013).

Under the third prong, prejudice will only be shown where the undisclosed evidence is "material." *See Boyette v. Lefevre*, 246 F.3d 76, 91–92 (2d Cir. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "Undisclosed 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting *Bagley*, 473 U.S. at 682). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome' of the case, hence, the undisclosed evidence will be deemed material only if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Bagley*, 473 U.S. at 682 and *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "[W]here the allegedly undisclosed material is not exculpatory, but rather impeachment evidence, that evidence is not material for *Brady* purposes . . . ." *Hayes v. Lee*, No. 11-CV-1365, 2015 WL 5943677, at *31 n. 34 (S.D.N.Y. Oct. 13, 2015) (quoting *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (internal citation marks omitted)); *see also United States v. Rosner*, 516 F.2d 269, 273–74 (2d Cir. 1975) (holding additional impeachment evidence was not material where other evidence supported conviction).

### iii. Interaction

Courts in the Second Circuit have long treated malicious prosecution and fair trial claims as separate causes of action. *See, e.g.*, *Garnett*, 838 F.3d at 278 (noting that "fair trial claims

cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims")
(citing *Ricciuti*, 124 F.3d at 130); *Brandon*, 705 F. Supp. 2d at 276 (noting that the Second
Circuit has permitted "claims for both malicious prosecution and a denial of the right to trial
based on the same alleged fabrication of evidence") (internal citation omitted)); *McCaffrey*, 2013
WL 494025, at *12 (treating plaintiff's malicious prosecution and fair trial claims as separate
constitutional torts). Several courts in the Second Circuit have, however, found that *Brady*
claims are duplicative of both fair trial and malicious prosecution claims where the alleged
underlying conduct is the same, and have therefore considered plaintiffs' claims through the lens
of *Brady*. *See, e.g.*, *Deanda*, 137 F. Supp. 3d at 578; *McCaffrey*, 2013 WL 494025, at *12.

In *Deanda*, the court granted summary judgment to the defendants on plaintiff's
malicious prosecution claim because it found there was probable cause to initiate the criminal
proceeding and that that served as a complete defense. 137 F. Supp. 3d at 575. The court then
separately assessed plaintiff's *Brady* violation claim and found it was "duplicative of [Plaintiff's]
malicious prosecution claim," because the plaintiff offered the exclusion of exculpatory evidence
from a police report as the basis of her malicious prosecution claim. *Id.* at 578. The court
explained that in a case where a "plaintiff can demonstrate that police have turned over
fabricated evidence to the prosecutor," the court can redress such conduct "not as a *Brady*
violation, but because it violates the right not to be deprived of liberty on the basis of false and
fabricated evidence [as a malicious prosecution claim]"). *Id.* at 578 (citing *Myers v. County of
Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011)). The court then analyzed plaintiff's claim
through the *Brady* lens and concluded that the plaintiff failed to allege "the second element of a
*Brady* claim—that the evidence was suppressed." *Id.*

Unlike the plaintiff in *Deanda*, Plaintiff here specifically does not rely on only the allegedly withheld *Brady* materials as the basis for his malicious prosecution claims. His malicious prosecution claim against Johnstone survives this Motion To Dismiss based on the alleged conduct of misinforming Farrell, not based on the withholding of *Brady* materials. The Court will thus consider whether Plaintiff can also state a separate *Brady* claim against Johnstone. Plaintiff's malicious prosecution claims against Feliciano and Solomon, which are dismissed herein, are also based on their whole course of conduct, not just the withholding of *Brady* materials. Therefore, the Court will consider whether Plaintiff successfully states a separate *Brady* claim against Feliciano and Solomon.

In *McCaffrey*, the court treated the plaintiff's malicious prosecution and fair trial claims as "causes of action for separate constitutional torts." 2013 WL 494025, at *10. The court treated the plaintiff's fair trial claim and *Brady* violation claim as one, however, "[b]ecause the parties have discussed Plaintiff's asserted *Brady* violations as the basis for [the] [p]laintiff's § 1983 denial of fair trial claim" and the court therefore "address[ed] [the] [p]laintiff's fair trial claims through the lens of *Brady*." *Id*. at *12 (internal quotation marks omitted). Applying the *Brady* violation test, the court denied summary judgment on the fair trial claim because there was a question of fact as to whether the plaintiff suffered prejudice at trial because exculpatory statements were suppressed or fabricated evidence turned over to prosecutors. *See* 2013 WL 494025, at *13.

Unlike the plaintiff in *McCaffrey*, Plaintiff here specifically does not rely on only the withholding of *Brady* materials as the basis for his fair trial claim. In their Memoranda of Law, Monticello Defendants assume that Plaintiff is basing his fair trial claim on the withholding of *Brady* and *Rosario* materials, specifically pointing to the Mack recording. (Monticello Defs.'

Mem. 23–25; Monticello Defs.' Reply 4–5).[9]  In his opposition, however, Plaintiff supports his fair trial claim with allegations that Monticello Defendants failed to inform Farrell about their false statements, created a false narrative, and conducted the investigation into Plaintiff in a deficient manner.  (Pl.'s Mem. re Monticello Defs. 17–19).  Plaintiff does not mention the withholding of *Brady* materials in his brief's section on his fair trial claim.  (*See id.*)  Plaintiff does, however, mention the withholding of exculpatory evidence, specifically the Mack recording, in the section of his brief arguing he suffered a *Brady* violation.  (Pl.'s Mem. re Monticello Defs. 20–21).  The Court thus considers the basis of Plaintiff's fair trial claim to be the fabricated evidence (in the form of misrepresentations to Farrell), *and* the basis of Plaintiff's *Brady* claim to be the withheld exculpatory evidence.  The Court therefore considers Plaintiff's claim that Monticello Defendants withheld exculpatory evidence through the "*Brady* lens."

The Court thus applies the fair trial claim legal standard to each Monticello defendant with respect to any allegedly "fabricated evidence," *see Ricciuti*, 124 F.3d at 130, and the *Brady* standard to each Monticello defendant with respect to any withheld exculpatory evidence, *see Ying Li*, 246 F. Supp. 3d at 626–28 (analyzing fabrication of false evidence allegations as a fair trial claim and separately analyzing concealment of exculpatory evidence allegations as a *Brady* violation).

---

[9] Monticello Defendants respond to both Plaintiff's fair trial and *Brady* claims with the same argument that Plaintiff cannot state a claim based upon the Mack recording because police officers do not have an obligation to turn the materials over until trial and that once officers turn such materials over, it becomes the prosecutor's responsibility to produce such evidence to the defense.  (Monticello Defs.' Mem. 23–25; Monticello Defs.' Reply 4–5).  Monticello Defendants cite to extraneous materials the Court has explained it will not consider, (*see* supra Section I(C)(3)), to elaborate on who was in possession of the *Brady* materials, whether those materials were turned over, and whether Farrell was sanctioned for failing to produce those materials.

### iv.  Fair Trial Standard Applied

Plaintiff alleges that Johnstone falsely informed Farrell during one of their calls or meetings that Plaintiff had engaged in criminal activity.  (Am. Compl. ¶ 73l.)  Plaintiff also alleges that each Monticello Defendant participated in manufacturing the McCline file so that they could use it to assert that Plaintiff was guilty by association.  (*Id*. ¶¶ 145, 149.)  Plaintiff further alleges that each Monticello Defendant knowingly misled Farrell into believing LiGreci and Plaintiff committed a crime, and that this ultimately led to Plaintiff's conviction.  (*Id*. ¶¶ 67, 69, 70, 72, 95–96, 99, 101, 112, 119.)  Although Plaintiff fails to offer details about the timing and substance of Johnstone's misrepresentation to Farrell, and about what the falsehoods in the McCline file were and how they implicated Plaintiff, at this stage he has plausibly pleaded fabrications by Monticello Defendants that resulted in his conviction.  Therefore, Monticello Defendants' motion to dismiss Plaintiff's fair trial claim is denied.

### v.  *Brady* Violation Standard Applied

Plaintiff fails to allege that Solomon and Johnstone withheld the Mack recording from Farrell because Plaintiff fails to allege any fact showing that Solomon and Johnstone even knew of the existence of the Mack recording, that it was ever in their possession, or that they ever had an opportunity to turn the recording over to Farrell and failed to do so.  *See Bermudez*, 790 F.3d at 376 n.4 ("Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors.").  Plaintiff does, however, allege that Feliciano was the officer who conducted the Mack interview and created that recording, (*id*. ¶¶ 120–21), and that he was a key witness at Plaintiff's trial, (*id*. ¶ 125).  Even assuming that alleging that Feliciano created the Mack recording and later testified somehow showed that he withheld evidence, Plaintiff fails to allege prejudice.

Plaintiff alleges that Monticello Defendants failed to provide Farrell the Mack recording, (*Id.* ¶ 121), and that this resulted in prejudice to Plaintiff because he was not able to cross-examine and thus impeach Feliciano, a key government witness (*id.* ¶¶ 124, 127). Plaintiff alleges that the recording could have been used to impeach Feliciano, but does not specify how the evidence would have been exculpatory. *See Hayes*, 2015 WL 5943677, at *31 n. 34 ("[W]here the allegedly undisclosed material is not exculpatory, but rather impeachment evidence, that evidence is not material for *Brady* purposes . . . .") (alterations and internal quotation marks omitted). Plaintiff does not allege what the contents of recording were or how they would have changed the outcome of the proceeding, and thus does not satisfy the prejudice element of a *Brady* claim. *See Bagley*, 473 U.S. at 682 (holding that "undisclosed evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense the result of the proceeding would have been different"); *Kyles*, 514 U.S. at 435 (same); *Payne*, 63 F.3d at 1209 (same). Therefore the Court dismisses Plaintiff's *Brady* claim as to each Monticello Defendant.

### d. Due Process Claim

Plaintiff does not separately allege a procedural or due process violation but only mentions due process in the context of his causes of action pursuant to § 1983. The Court interprets Plaintiff's due process claims to be based on the alleged *Brady* violation, (Pl.'s Mem. re Monticello Defs. 20–21), and the alleged violation of the right to a fair trial, (*id.* 17–19). "A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights." *Fappiano v. City of New York*, 640 Fed. App'x. 115, 118 (2d Cir. 2016) (citing *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)). A defendant's right to a fair trial is violated when exculpatory evidence is withheld, i.e., when a *Brady* violation occurs, and also

when an officer forwards fabricated evidence to prosecutors. *See Ricciuti*, 124 F.3d at 130.

Because the Court has addressed Plaintiff's *Brady* violation and fair trial claims in detail, it will

not conduct a separate procedural or substantive due process analysis. *See, e.g.*, *Ying Li*, 246 F.

Supp. 3d at 626–28 (construing plaintiff's due process claim to be based on alleged concealment

of exculpatory evidence (*Brady* claim) and fabrication of false evidence (fair trial claim) and

respectively applying the fair trial legal standard and the *Brady* violation legal standard).

The Court also does not read Plaintiff's Amended Complaint or briefing to suggest that

he is basing a due process claim on his malicious prosecution allegations. And indeed, Plaintiff

could not successfully do so because malicious prosecution and due process claims coalesce.

*See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding that malicious prosecution and due

process claims coalesce); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (same);

*Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 612–13 (S.D.N.Y. 2013) (same). The

Court has separately considered and ruled on Plaintiff's malicious prosecution, fair trial, and

*Brady* claims against Monticello Defendants and has thus addressed all procedural and

substantive due process claims Plaintiff raises against them in his Amended Complaint.

### e. Qualified Immunity

Monticello Defendants argue that even if Plaintiff states a claim they are nonetheless

shielded by qualified immunity. (Monticello Defs.' Mem. 25–26; Monticello Defs.' Reply 8–9.)

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (internal quotation marks omitted); *see also Village of Freeport v. Barrella*, 814 F.3d

594, 609 (2d Cir. 2016) (same). "Qualified immunity protects public officials from civil liability

only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins*, 776 F.3d at 114 (internal quotation marks omitted).[10]

"In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Betts v. Shearman,* No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014) (internal quotation marks omitted); *see also Hudson v. Cty. of Dutchess*, No. 12-CV-5548, 2015 WL 7288657, at *12 (S.D.N.Y. Nov. 16, 2015) (dismissing malicious prosecution claim on qualified immunity grounds based on arguable probable cause). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Cerrone*, 246 F.3d at 202–03 (internal quotation marks omitted). In other words, an officer is entitled to qualified immunity if (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable

---

[10] The Supreme Court has instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations, alterations, and internal quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 665 (citations and internal quotation marks omitted). Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Betts*, 2013 WL 311124, at *4 (same).

Because qualified immunity "reflects an immunity from suit rather than a mere defense to liability . . . [,] it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." *Betts*, 2013 WL 311124, at *4 (emphasis and internal quotation marks omitted). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004) (internal quotation marks omitted). "[W]hen determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts is presumed to be true . . . ." *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 285 (S.D.N.Y. 2009). In such cases, "the question to be answered is whether the defendant . . . , confronted with the facts as alleged by [the] plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right." *Id.* Moreover, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 36.

Monticello Defendants argue that they are entitled to qualified immunity because the interpretation of state law was not clear at the time that Plaintiff was investigated, tried, and convicted. (Monticello Defs.' Mem. 25–26; Monticello Defs.' Reply 8–9). Plaintiff's conviction was overturned by the Appellate Division on the grounds that because LiGreci, as Village Manager, had the authority to direct and to stop a background check and had the authority to direct a Village employee to answer questions, he could not be guilty of official

misconduct under N.Y. Penal Law § 195.00(1) because the provision requires performance of an unauthorized act. *Hutchins*, 25 N.Y.S.3d at 702–04.[11] Monticello Defendants point to another New York Appellate Division decision, *People v. Flanagan*, 28 N.Y.3d 644 (2017), where the court, contrary to *Hutchins*, held that § 195.00(1) can be violated even if the underlying conduct of the official was authorized because "all the surrounding circumstances" including the official's motives can be considered. *Id*. at 657. Based on this conflicting state court interpretation of § 195.00(1), Monticello Defendants argue that it could not have been clearly established to them, or to "every reasonable official" in their place, that the conduct they allegedly reported could not, as a matter of law, meet the elements of Penal Law §195.00(1), and that therefore they were justified in presenting evidence of a potential crime to Farrell. (Monticello Defs.' Mem. 26.)

Plaintiff counters that Monticello Defendants' qualified immunity defense does not appear on the face of the Amended Complaint and therefore Monticello Defendants are not entitled to qualified immunity. (Pl.'s Mem. re Monticello Defs. 23–25). The Amended Complaint states that § 195.00(1) was the statute pursuant to which Plaintiff was convicted, (Am. Compl. ¶¶ 2, 22), and that Plaintiff's conviction was reversed on appeal. (*Id*. ¶¶ 2, 38, 158, 173.) The Amended Complaint, however, does not elaborate on the Appellate Division's reasoning for the reversal nor does it mention *Flanagan* or that the officers were aware of the conflicting state law. Moreover, Monticello Defendants do not argue that they knew of or relied on *Flanagan*, or any other similar case, nor can they, because *Flanagan* was issued in 2017 and postdates all of the 2011–2012 conduct by Monticello Defendants that is at issue in this case. The Court agrees

---

[11] The appellate court also found no proof that Plaintiff knew or believed LiGreci's conduct was unauthorized, so that he could not have the subjective intent to commit the crimes with which he was charged. 25 N.Y.S.3d at 704.

with Plaintiff that Monticello Defendants' qualified immunity defense does not appear on the face of the Amended Complaint.

The Court thus finds that Monticello Defendants are not entitled to qualified immunity at the motion to dismiss stage and Plaintiff's surviving claim for malicious prosecution against Johnstone and his fair trial claim against all Monticello Defendants can proceed.

### 2. Farrell

Plaintiff alleges that Farrell maliciously prosecuted him, denied him the right to a fair trial, and violated his due process rights, (Am. Compl. ¶¶ 176–79), and that he conspired with Monticello Defendants to do so, (*id.* ¶¶ 180–82). Farrell argues that (1) as a prosecutor he is absolutely immune from liability, (2) if absolute immunity is not a bar to the claims against him he is entitled to qualified immunity, and (3) immunity determination notwithstanding, that Plaintiff fails to state a claim against him. (Farrell Mem. 1.)

#### a. Absolute Immunity

##### i. Absolute Immunity Standard

It is well established that prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when "function[ing] as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (internal quotation marks omitted); *see also Hill v. City of New York.*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." (alterations and internal quotation marks omitted)). However, not every action performed by a prosecutor is "absolutely immune merely because [it was] performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Rather, a prosecutor's

entitlement to absolute immunity turns on "the capacity in which the prosecutor acts at the time of the alleged misconduct." *Zahrey*, 221 F.3d at 346. Thus, to determine whether a prosecutor's conduct is entitled to absolute immunity, courts must apply "a functional approach, which looks to the nature of the function performed [by the prosecutor]." *Buckley*, 509 U.S. at 269 (internal quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of [] 'functional' considerations . . . .").

Generally, whether a prosecutor "may be sheltered by absolute immunity from liability for [his conduct] turns on whether or not [his conduct] occurred in the course of his role as an advocate." *Hill*, 45 F.3d at 662. This protection covers such acts as "initiating a prosecution and presenting the case at trial" or at other court proceedings, *id.* at 661; *see also Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the state's case, whether at a trial, a preliminary hearing, or a bail hearing.") (citations and internal quotation marks omitted)), as well as "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made," *Buckley*, 509 U.S. at 273; *see also Hill*, 45 F.3d at 661 (noting that prosecutors are "immune for conduct in preparing for [prosecutorial] functions," including "evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (internal citations omitted)). Absolute immunity also protects "the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement." *Bernard*, 356 F.3d at 506. Furthermore, it is well established that a prosecutor's motives for actions that are deemed to be within his or her role as an advocate are

irrelevant to the granting of absolute immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 237–38 (2d Cir. 2005) (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard*, 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused"); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) ("[W]hen the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." (internal quotation marks omitted)).

In contrast, "[w]hen a [prosecutor] functions outside his [or her] . . . role as an advocate for the People, the shield of [absolute] immunity is absent." *Hill*, 45 F.3d at 661. Specifically, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273 (internal quotation marks omitted); *see also Smith*, 147 F.3d at 94 ("[W]hen a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." (internal quotation marks omitted)).

Although the line between a prosecutor's acts as an advocate and as an investigator is often "difficult to draw," *Zahrey*, 221 F.3d at 347, "[t]he key . . . is the degree to which the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,'" *DiBlasio v. Novello*, 344 F.3d 292, 300 (2d Cir. 2003) (quoting *Imbler*, 424 U.S. at 430). In assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant, but not dispositive. *See id.* at 300–01; *see*

*also Genzler v. Longanbach*, 410 F.3d 630, 639 (9th Cir. 2005) ("The timing of evidence gathering is a relevant fact in determining how closely connected that conduct is to the official's core advocacy function in the judicial process . . . ."). For example, the Supreme Court has observed that absolute immunity is unavailable for investigative conduct that takes place before probable cause has been established: "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274; *see also Zahrey*, 221 F.3d at 347 n.2 (explaining that *Buckley* "suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative"). The converse is not necessarily true, however. "[A] determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards." *Buckley*, 509 U.S. at 274 n.5. The Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand—making clear that only the former entitles a prosecutor to absolute immunity. *Smith*, 147 F.3d at 94. Notably, the mere fact that a prosecutor might later convene a grand jury and obtain an indictment does not serve to cloak his or her prior investigatory actions with the protection of absolute immunity. *See Buckley*, 509 U.S. at 275–76 ("That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial.").

"[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery . . . because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Deronette v. City of New York*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (alterations and internal quotation marks omitted). "However, the Second Circuit

has held that, 'when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.'" *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 65 (E.D.N.Y. 2010) (quoting *Hill*, 45 F.3d at 663).

## ii. Application

Plaintiff makes the conclusory allegation that Farrell participated in the fabrication of accusations against him. (Am. Compl. ¶¶ 139, 140.) According to Plaintiff Farrell allegedly worked with Monticello Defendants to manufacture the investigative file regarding the McCline background investigation so that they could use it to allege that Plaintiff was guilty by association. (*Id.* ¶¶ 145, 149.) Plaintiff points to the July 30, 2012 letter Farrell sent to Hill, instructing her that the MPD wanted McCline disqualified from the hiring process, (*id.* ¶¶ 145, 149), as proof of Farrell's interference with the hiring process and his attempt to manufacture allegation against Plaintiff, (*id.* ¶ 141). Plaintiff labels this as investigatory work that took place at the pre-arrest stage. (*Id.* ¶¶ 139, 140.) Plaintiff fails, however, to explain how these investigatory actions related to him. The letter and the allegedly false investigatory file were about McCline and not Plaintiff. The only connection between these investigatory acts and Plaintiff is his conclusory allegation that Farrell engaged in these actions in order to eventually maliciously prosecute Plaintiff. (*Id.* ¶¶ 139, 140.) Plaintiff fails to point to any specific investigatory actions Farrell took that related to him. Thus, the only concrete action Plaintiff points to that Farrell took in relation to him is the actual decision to *institute a prosecution* against him based on false evidence. (*See id.* ¶ 135).

Farrell is protected by absolute immunity for his evaluation of the evidence and subsequent decision to indict Plaintiff. *See Kalina v. Fletcher*, 522 U.S. 118, 130 (1997) (finding that the defendant prosecutor's "determination that the evidence was sufficiently strong to justify a probable-cause finding[] [and] her decision to file charges" "involved the exercise of professional judgment" and were protected by absolute immunity); *Williams v. City of New York*, No. 06-CV-6601, 2009 WL 3254465, at *10 (E.D.N.Y. Oct. 9, 2009) ("[E]valuating evidence and deciding whether to initiate a prosecution are exactly the sort of actions for which absolute immunity shields prosecutors from liability."); *Bhatia v. Gaetano*, No. 06-CV-1771, 2008 WL 901491, at *3 (D. Conn. Mar. 31, 2008) (finding that the decision to institute a prosecution "after considering the weight of evidence in the case," despite evidence that witnesses were lying, was protected by absolute immunity). Moreover, to the extent Plaintiff alleges that Farrell presented false evidence to or excluded exculpatory evidence from the Grand Jury, he is protected by absolute immunity for such acts of advocacy. *See Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006) (conferring absolute immunity on prosecutor who allegedly conspired to present false evidence at trial); *Shmueli*, 424 F.3d at 237 ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" (quoting *Imbler*, 424 U.S. at 431 n.34)); *Deskovic v. City of Peekskill*, No. 07-CV-8150, 2009 WL 2475001, at *15 (S.D.N.Y. Aug. 13, 2009) (finding the prosecutor "absolutely immune for allegedly procuring false scientific evidence . . . and then presenting it at trial").[12]

---

[12] The fact that Plaintiff alleges that Farrell manufactured charges against him in order to create a high-profile case to gain media attention and to advance his career and profile does not impact the absolute immunity analysis. As noted, a prosecutor's motive to engage in conduct for which the prosecutor is immune is irrelevant. *See Shmueli*, 424 F.3d at 237–38; *Pinaud*, 52 F.3d at 1148.

Because the Court finds that Farrell is absolutely immune from liability for the conduct alleged by Plaintiff, the Court dismisses all claims against him. *See, e.g.*, *Shmueli*, 424 F.3d at 236–37 (dismissing malicious prosecution claim based on absolute immunity); *Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) (reversing district court denial of motion to dismiss, noting that prosecutors are absolutely immune for non-disclosure of exculpatory information); *Peay*, 470 F.3d at 68 (affirming dismissal of claim against prosecutor for § 1983 conspiracy based on absolute immunity); *O'Neal*, 196 F. Supp. 3d at 431–32 (dismissing fair trial claim based on absolute immunity); *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 335 (S.D.N.Y. 2017) (dismissing § 1983 "due process violations" claim where prosecutor allegedly ignored evidence in custody of NYPD detectives, malicious prosecution claim, and *Brady* violation claim against prosecutor based on absolute immunity).

### 3. Conspiracy

A § 1983 conspiracy claim requires: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."[13] *Pangburn v.*

_____

[13] Plaintiff must allege an agreement and specify how defendants carried it out in concert. *See Rose v. Garritt*, No. 16-CV-3624, 2018 WL 443752, at *8 (S.D.N.Y. Jan. 16, 2018) (dismissing § 1983 claim that the nurse "'purposely omitted' [the] [p]laintiff's descriptions of his injuries and the assault 'to limit [the] [p]laintiff's capacity to file and win an Eighth Amendment suit'" because the plaintiff failed to allege an agreement between the nurse and the assaulting defendants (alterations and citations omitted)); *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *12 (S.D.N.Y. Aug. 28, 2017) (dismissing § 1983 conspiracy claim because the complaint did not "provide even circumstantial allegations that the alleged conspiracy existed, much less any details as to the extent of the alleged agreement or how [the] [d]efendants collectively carried it out"); *Baines v. City of New York*, No. 10-CV-9545, 2015 WL 3555758, at *12 (S.D.N.Y. June 8, 2015) ("Although [the] [p]laintiff repeatedly asserts that [the] [d]efendants entered an agreement to violate his civil rights . . . , the [complaint] is devoid of facts that would render that allegation plausible as opposed to merely conceivable." (citation omitted)); *Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *7–8 (S.D.N.Y. Jan. 13, 2015) (dismissing a conspiracy claim where plaintiff failed

*Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp.

2d 387, 397 (S.D.N.Y. 2007) (citing *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y.

2006)). "[C]omplaints containing only conclusory, vague, or general allegations that the

defendants have engaged in a conspiracy to deprive the plaintiff of his [or her] constitutional

rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified

by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir.

2002) (internal quotation marks omitted).

"Allegations of conspiracy must allege with at least some degree of particularity overt

acts which defendants engaged in which were reasonably related to the promotion of the alleged

conspiracy." *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 383–84 (S.D.N.Y. 2012)

(omitting internal quotation); *see also Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir.

2014) (finding claims that defendants worked together insufficient to suggest an improper

motive); *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 154 (2d Cir. 2006)

(finding that the fact that government employees from various federal and state agencies

cooperated does not, without more, prove they conspired to violate plaintiff's rights); *Scotto v.

Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (concluding that "several telephone calls and

other communications" were not sufficient to show conspiracy); *Zahrey v. City of New York*, No.

98-CV-4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009) (dismissing conspiracy claim

---

to "put forward any facts supporting the inference that the . . . [d]efendants acted in concert"); *Bermudez v. City of New York*, No. 11-CV-750, 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013) (dismissing a conspiracy claim where the plaintiff alleged that the defendants "conferred and agreed not to pursue" certain evidence, "agreed not to disclose" certain information, and "actively conspired to suppress the actual events").

on summary judgment where the plaintiff "provide[d] no evidence, absent the fact that the [i]ndividual [d]efendants worked together, that . . . an agreement existed").

Plaintiff neither properly alleges the required existence of an agreement, nor the required meeting of the minds, between Monticello Defendants and Farrell. Plaintiff describes Solomon, Johnstone, and Feliciano's positions in the MPD, how they interacted with each other, and how they interacted and communicated with Farrell. Plaintiff alleges that they shared information about the McCline investigation and spoke with each other. (Am. Compl. ¶¶ 72, 73(a–n).) The facts Plaintiff points to fail to do more than describe a group of police officers working on the same case and passing information on to a prosecutor. *Zahrey*, 2009 WL 1024261, at *11 (dismissing conspiracy claim where plaintiff provided no evidence, absent the fact that defendants worked together, that an agreement existed). Plaintiff does not allege when or how any of the Defendants agreed to violate Plaintiff's rights, what the scope of the agreement was, or any other detail regarding the alleged agreement. Plaintiff thus fails to allege a factual basis supporting the existence of an agreement.

As for Farrell, Plaintiff repeatedly alleges that Monticello Defendants lied to him and mislead him. (Am. Compl. ¶¶ 72, 73(a–n), 96, 119.) Plaintiff does not explain how Monticello Defendants simultaneously lied to Farrell and had an agreement with him to violate Plaintiff's constitutional rights. Plaintiff thus fails to allege a factual basis supporting a meeting of the minds between Monticello Defendants and Farrell.

Accordingly, the conspiracy claim against Monticello Defendants and Farrell is dismissed.

### III. Conclusion

In light of the foregoing analysis, the Court grants Monticello Defendants' Motion To Dismiss with respect to the *Brady* and conspiracy claims as to each Monticello Defendant, grants the Motion with respect to the malicious prosecution claim against Solomon and Feliciano, but denies the Motion with respect to the malicious prosecution claim against Johnstone, and denies the Motion with respect to the fair trial claim as to each Monticello Defendant. The Court grants Farrell's Motion To Dismiss in its entirety on absolute immunity grounds. The claims that are dismissed are dismissed without prejudice. Although Plaintiff has filed an Amended Complaints in this Action, this is the first adjudication on Defendants' Motion to Dismiss. *See Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *5 n. 6 (S.D.N.Y. Sept. 30, 2015) ("[The] Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants."). Plaintiff may file a Second Amended Complaint within thirty days of this Opinion and Order. The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 50, 53.)

SO ORDERED.

DATED:     September 29, 2018
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE